# CHARLESTON.

## FINK *v.* THOMAS.

Submitted June 3, 1909. Decided December 14, 1909.

1. EXCEPTIONS, BILL OF—*Certification—Sufficiency.*

An order in vacation showing the execution of a bill of exceptions, not signed by the judge, is certified as a part of the

66   487
f66   650

record. A paper is presented, certified by the clerk, showing the same order, having endorsed upon it, "Enter. I. C. Herndon", who is judge. The bill is good as part of the record. (p. 488).

2. TRIAL—*Questions for Jury—Instructions—Exemplary Damages.*
   An instruction binding the jury to give exemplary damages is erroneous. (p. 492).

3. DAMAGES—*Exemplary Damages.*
   Exemplary or puntive damages in an action for tort are not matter of right, and it is with a jury to say whether or not they shall be given. (p. 492).

4. ASSAULT AND BATTERY—*Exemplary Damages.*
   In an action for assault and battery punitive damages can not be found unless the act is unjustifiable, wilful, wanton and reckless, manifesting malice. (p. 493).

Error to Circuit Court, Mercer County.

Action by L. J. Fink against J. Walton Thomas. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Harold A. Ritz, John A McGrath,* and *Russell S. Ritz,* for plaintiff in error.

*Hugh G. Woods,* for defendant in error.

BRANNON, JUDGE:

In this case appears a bill of exceptions signed by the judge in vacation. There appears as part of the record certified an order purporting to be an order stating that the bill had been presented to the judge in vacation, and was executed; but this order was not signed by the judge. This without more would not be a good certificate by the judge authenticating the bill; it would not show it to be the final authentic bill. *State* v. *Blair,* 63 W. Va. 636; *Wells* v. *Smith,* 49 *Id.* 78. But on *certiorari* there has been brought to us a copy of a paper showing an exact copy of the said unsigned order, with the endorsement on it giving the title of the case, and stating it to be a vacation order in the case, with the wordes endorsed on the back of the paper "Enter: I. C. Herndon." This is the judge's order, under the practice generally used of endorsing on papers an order by the judge for entry as part of the record. The better

practice would be to sign the certificate. This bill of exceptions is contested as not good; but we think it is. We must not be in this matter too technical, and thus deprive suitors the benefit of resort to this Court.

This is an action of trespass on the case by L. J. Fink against Walton Thomas for assault and battery. The case was tried by a jury and resulted in a verdict for the plaintiff for seven hundred and fifty dollars, for which the court rendered judgment. A short outline of the evidence is rendered necessary for the consideration of instructions and other points of alleged error. The evidence tends to show, for our present purposes, without our expressing any opinion upon its force, that Thomas conducted a liquor saloon in Mercer county, and that after the plaintiff, a miner, had been paid on pay day he became intoxicated and went into the saloon of Thomas and called for liquor, and Thomas' bar keeper refused him liquor, and Fink became very angry. A. K. Underwood, a deputy sheriff, was in the saloon, and he urged Fink to lie down and get sober, but Fink refused and swore and demanded liquor and kicked the bar keeper for failing to let him have it, and drew a knife, a large knife, a large dirk knife. Then Underwood put him under arrest and took the knife from him. Thomas was across the room and heard the noise and came up and asked what was the trouble, when Underwood replied that Fink had a great long knife and that he, Underwood, wanted Thomas to help him, Underwood. The plaintiff grabbed the defendant and threw him down and then he was taken by Underwood to the jail, Thomas remaining at the saloon. At the jail he snatched hats from several bystanders, and those present declining to aid him in regaining the hats, Underwood sent to Thomas to assist him. When Thomas came Underwood gave Thomas his revolver and told him to stand in the door to prevent the escape of the plaintiff, while Underwood went into the cell to get the hats, and when Underwood started in after the hats Fink, with another knife in his hand, approached the door of the cell as if to attack Thomas, when Thomas struck him on the head with the revolver and knocked him down and prevented his cutting any one, and also prevented his escape. The knife was then taken from Fink.

The first error assigned is that the court allowed a witness to

answer the question,. "Tell the jury what manner in which Underwood took Fink out of there," the answer being "Mr. Underwood drug him out". This is branded by counsel as in-admissible under the principle of *res alios acta,* a rule which prevents a party from being concluded or affected by evidence of the act, conduct or the declarations of strangers. It is urged that Thomas should not be prejudiced by the acts of Underwood in taking Fink to jail; that his dragging Fink out was Underwood's act, and that to introduce it would stir up prejudice against Thomas, and incite sympathy for Fink, and lean the jury to Fink and magnify damages; that it could throw no light on the controversy between Thomas and Fink. We are cited to *Deitz* v. *Insurance Co.,* 33 W. Va. 527, for the proposition that, "Questions which have no bearing upon the issue, or a very remote one, and which are calculated to prejudice the minds of the jury ought to be excluded." We are cited to 1 Greenleaf on Evidence, section. 52, to the effect that this rule excludes evidence of collateral facts not throwing any light upon the principal matter, and tending to draw away the minds of the jury from the point in issue, and to excite prejudice and mislead the jury. What had Thomas to do with the manner of Underwood's taking Fink to jail? No conspiracy is proven. Nor can this evidence be justified under the principle of *res gestae,* because things introduced under that principle must be pertinent, relevant and cast light on the issue. This evidence was inadmissible.

Another error assigned is this: When at the jail, as the evidence tends to show, Fink was violent and set fire to the bed clothes and was breaking a bed bunk and was handcuffed to the bars. A man named Hancock was there. A witness Ferrell was asked, "You say that they handcuffed him to the bars"? The answer was, "Yes, sir, Mr. Underwood went up there and says 'I am going to handcuff you to the bars', and Mr. Hancock reached through the bars and grabbed him by the hair and held him until Mr. Underwood handcuffed him". The court refused to strike out this evidence. That was a matter between Hancock, Fink and Underwood. What had Thomas to do with Hancock's act? Or the act of Underwood as a deputy sheriff in this matter? It introduced Hancock's act into the case and tended to produce prejudice against the cause of Thomas, and

was inadmissible. Cases should be tried by the evidence shedding light on them, and relating to the parties litigant.

Another assignment of error is that the court allowed a witness to give evidence that Underwood had his pistol in his hand talking about shooting Fink, and was pointing this way between the bars, and somebody told him to go according to law as he was an officer. We don't see what that had to do with the case as against Thomas; but that part of this assignment of error touching the evidence of this witness that the pistol was a large one is admissible. Fink had a right to show the size of the pistol with which he was struck.

Another claim of error is that the defendant on the stand stated that he assisted in taking a knife away from Fink in the jail cell, and that the knife had a leather case, and then he was asked whether or not the knife was in that leather case, but the court would not allow it. If the proposition was to prove that the knife was out of the leather case, Fink having stated it was in the case, not out of it, we think it would have been admissible; but what answer was expected is not shown, and there is no error in this.

Another error assigned is this: Fink stated he was not drunk on the occasion. He was asked whether he had not on the Monday morning after the trouble in the presence of Underwood had a convesation with Sop Bryant, in which he told him that he had been drunk, and that they had beaten him up a little, and that they ought to have broken his damned neck. He denied this statement. Bryant stated that Fink had made that statement to him. The court admitted this only to give Thomas the benefit of the answer in the record, but instructed the jury to disregard the evidence. We do not see why the defendant could not prove that Fink was drunk as tending to affect the accuracy of his recollection as a witness, and also as bearing on his conduct at the time of the trouble, and also on the ground of impeachment of Fink as a witness. We think this evidence should have gone to the jury as relevant, to be given such weight as the jury might attach to it.

We next come to the instructions. The defendant complains of two instructions, Nos. 1 and 2, given on the plaintiff's motion. Instruction No. 1 tells the jury that if they should believe from the evidence that Thomas made an assault upon the

plaintiff, and did strike and beat him with his fist and a pistol, and such assault was without any, or upon slight, provocation, "they should find for the plaintiff and give him, not only such damages as will compensate him for all physical suffering. mental anguish and shame, but also such as will operate as a punishment to the defendant, and tend to deter him and others from similar conduct". Passing by the first element of this instruction as likely defensible, we come to the last clause which is imperative upon a jury to find punitive damages. This last clause is wrong in two features. This instruction in its last clause is against the whole current of authority upon punitive damages. That matter is left to the discretion of the jury under all circumstances; but this instruction assumed that the elements of punitive damages were presented by the evidence, and required the jury, by a binding instruction, to find punitive damages. It is erroneous in the feature that it does not leave that matter to the discretion of the jury. The matter of damages in cases of *tort* is left to the jury, and particularly so as to punitive or exemplary damages. I have examined forms of instructions in 1 Sackett on Instructions, sections 963, 964, and 2 Blashfield on Instructions, pages 434, 435, and Thompson on Trials, sections 2075, 2076, and they do not direct the jury to find such damages, but leave it to the jury. I see from Oxley on Instructions, p. 196, that instructions telling the jury that under circumstances it should find exemplary damages were used in *McMaster* v. *Dyer*, 44 W. Va. 646, and *Mayer* v. *Frobe*, 40 *Id.* 246. They were not held as causes for reversal in those cases, but the point was not raised or discussed. In *Mayer* v. *Frobe* the syllabus says that the jury "may" assess exemplary damages. So in *Stevens* v. *Friedman*, 58 W. Va. 246. Exemplary or punitive damages are not matter of right. Many authorities are cited in 12 Am. & Eng. Ency. L., p. 51. There we find the law laid down thus: "It is laid down as a general rule in many cases that exemplary damages are never recoverable as of right, and that whether or not such damages are recoverable rests always in the discretion of the jury. The rule that the question of exemplary damages is one for the jury in the exercise of their discretion has been held to apply though it was established in point of fact that elements existed which would, according to the general rule of exemplary damages, warrant such

an assessment. It has been held, therefore, to be erroneous to instruct the jury that in any state of facts it is their duty to award exemplary damages, or that they should, will, ought to, or must, do so; or that if they find a given state of facts the plaintiff is entitled to recover such damages. And so carefully is the discretion of the jury guarded in this particular, it has been declared, that an instruction several times repeated which seemed to invite the jury to give punitive damages was erroneous." So says 1 Joyce on Damages, section 118. As will there be seen there is some slight conflict on this point, though the great current and weight of authority supports the statement just quoted from the Encyclopedia. The authorities are there carefully collected. The authorities lay down that whether punitive damages be given or not is a matter of discretion with the jury. I find in 1 Sedgwick on Damages, section 387, that "where there is evidence of circumstances sufficient to uphold a verdict for exemplary damages, the question whether they shall be given or not is one for the jury; and it is error to instruct the jury to give exemplary damages, for the plaintiff could never claim them as a matter of law". Thompson on Trials, section 2065, says: "The jury may, if they think proper, give damages by way of punishment or example, which are variously termed vindictive, punative or exemplary damages. * * * * It may be stated that in cases in which such damages *may* be given, whether they will be given or not, is a question within the *discretion of the jury*".

Another vice in this instruction is that it leaves out elements essential for the finding of exemplary damages. All the books say that to warrant punitive damages there must be malice, oppression, or wanton, wilful or reckless conduct. I need only cite for this *Stevens* v. *Friedman*, 58 W. Va. 78, and *Mayer* v. *Frobe*, 40 *Id.* 246. This instruction leaves out these essential elements. It does say that the assault must be without any or slight provocation; but that is not enough. When we go beyond actual or compensatory damages, and enter the domain of exemplary or punitive damages, we must find, a jury must find, elements and circumstances based on the evidence beyond mere compensation for injury. There must be gross fraud, malice, oppression or wanton, wilful or reckless conduct or criminal indifference to civil obligation.

Instruction No. 2 says that the fear that a man intends to commit assault and battery or felony, however well grounded, unaccompanied by any overture indicative of such intention will not warrant an assault by way of prevention, and there must be some overt act indicative of imminent danger. We do not think this instruction is objectionable. It is true it is abstract and not concrete. Perhaps such instructions ought not to be abstract, but concrete, and put the facts or hypothesis applicable to the particular case; but we think that the decisions of this State will justify this instruction as not being cause for setting aside a verdict.

The defendant complains of refusal to give instructions Nos. 2, 3, 5, 6 and 8. We do not know that it will lay down any legal principle not well known to discuss these instructions. No. 2 is that a deputy sheriff and notary public are conservators of the peace, and that they not only have the right, but it is their duty, to arrest any one violating the law in their presence. Underwood was a deputy sheriff and the defendant Thomas a notary. As the evidence tended to show that Fink was armed with dangerous weapons, and threatening to use them we think this instruction was appropriate to the case. It ought to have gone before the jury.

Defendant's instruction No. 3 is to the effect that if Thomas entered the jail cell to get the hats, and while in the cell was, without fault of himself, attacked by the plaintiff under such circumstances as to give him reasonable ground to believe, and if he did believe, that he was in danger of great bodily harm at the hands of the plaintiff, he was justified in striking the plaintiff with the pistol, if he believed and had reason to believe such striking was necessary to protect himself from great bodily harm at the hands of the plaintiff, and that a jury should view his action in the premises from his standpoint at the time. We do not see why this instruction was refused.

Instruction No. 5 told the jury in much the same language that if Thomas believed that Fink made an attack upon Underwood with a knife which would result in death or serious bodily injury, and the defendant believed, and had good reason to believe, that such attack was imminent, and that it was necessary to act at once to prevent such threatened injury, and that such attack by the defendant was made with no more force than was

apparently necessary from the standpoint of Thomas to prevent the plaintiff from making such attack on Underwood, then the defendant was justified in making such assault in the saloon, and that if the jury should further believe from the evidence that at the time of the attack upon the plaintiff by the defendant in the jail that the defendant had good reason to believe, and did believe, that it was necessary to make the assault, in order to prevent the plaintiff from killing the defendant or Underwood or to prevent serious bodily injury to himself or Underwood, and that the defendant used no more force than was necessary to prevent the threatened injury, then the defendant was justified in making the assault. We do not see why this instruction was refused. If, in fact, Fink was making a deadly attack upon Underwood, who was then, if he was, acting as deputy sheriff in vindication of the laws of the State, it seems plain that Thomas would be justifiable in repelling Fink's assault upon Underwood. Not only an officer of the law, but an individual, seeing a murder or maiming about to be committed, may, for the preservation of human life, intervene with that force necessary to avert it. So, Thomas, if in view of such an offense, would be justified in repelling it, or preventing it, by any force actually requisite. Of this the jury must judge. Of course, Thomas would have a right, under such circumstances, if they existed, to take like action. It must be understood that we do not pass upon the weight or credibility of the evidence. We only deal with the evidence so far as is necessary to pass intelligently upon the evidence and instructions above spoken of.

Instruction No. 8 seems sound; but practically it is covered by others.

Our conclusion is to reverse the judgment, set aside the verdict, and remand the case to the circuit court for a new trial.

*Reversed and Remanded.*