# CHARLESTON

## WILHELM v. PARKERSBURG, MARIETTA & INTERURBAN RAILWAY CO.

### Submitted June 23, 1914. ·Decided September 15, 1914.

1. TRIAL—*Abstract Instructions.*

    Though ordinarily not erroneous warranting reversal, an instruction should not state abstract legal propositions, unless it contains direction for proper application thereof to the facts of the concrete case. (p. 680).

2. SAME—*Instructions—Pleadings and Proof.*

    Nor should an instruction be given in any case without averment and proof upon which to base it. (p. 682).

3. SAME—*Instructions—Applicability—Evidence.*

    Without proof of incompetency, and under an averment that a common carrier must "use due and proper care and skill about carrying" passengers and charging a breach of such duty, an instruction based thereon, saying defendant's duty required employment of competent servants in the conduct of its business, is erroneous. Nor is it justified by the additional complaint that, without any just cause or excuse therefor, the employee, a conductor, "violently and forcibly grasped" and injured plaintiff, then a passenger on defendant's car. (p. 681).

4. DAMAGES—*Instructions—Invading Province of Jury—Exemplary Damages—Carriers.*

    An instruction saying that if the jury believe from the evidence the servant's act was "malicious, wanton, willful or reckless, then, in addition to the actual damages" plaintiff "suffered for which she may be entitled to recover, the defendant is liable for exemplary or punitive damages", is prejudicial, and therefore erroneous, as an infringement upon the discretionary right vested in juries to award or refuse exemplary damages or "smart money." (p. 682).

5. TRIAL—*Instructions—Conformity to Evidence.*

    Though for the purpose of ejecting plaintiff's husband the servant

may have used more force than was reasonably necessary in causing plaintiff to change her position on the car, but he did not attempt to strike or beat her, an instruction directing a finding for plaintiff, based upon the jury's belief, from the evidence, that the servant "did strike, assault, beat or mistreat her", will be deemed erroneous, because of its apparent tendency to create prejudice against defendant. (p. 682).

6. CARRIERS—*Ejection of Passenger—Tortious Acts of Servant— Liability of Carrier.*

The authority conferred by §31, ch. 145, Code, does not relieve the master from liability for the tortious acts of the servant while engaged in actual discharge of official functions. (p. 683).

7. SAME—*Ejection of Passenger—Right.*

The right of ejection authorized by such statute is not dependent upon the personal safety or reasonable comfort or convenience of other passengers, and an instruction so limiting it is erroneous. (p. 684).

8. SAME—*Ejection of Passengers—Evidence.*

Upon the right of ejection of passengers for disorderly conduct, it is not improper to show complaint of such conduct by fellow passengers. (p. 685).

Error to Circuit Court, Wood County.

Action by Elizabeth C. Wilhelm against the Parkersburg, Marietta & Interurban Railway Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Krebs, Russell & Hiteshew,* for plaintiff in error.

*J. W. Vandervort* and *R. E. Bills,* for defendant in error.

LYNCH, JUDGE:

The plaintiff and her husband were, at the time of the injury for which she brought this action, pasengers on a street car line operated by the defendant company. They occupied the same seat, she that part next to the aisle. To facilitate the ejection of the husband, who, it said, was intoxicated and disorderly, the conductor removed or endeavored to remove plaintiff to another seat in the car. Whether he thereby inflicted any injury, or whether his treatment of plaintiff was unnecessarily forcible and violent, are questions as to which the evidence is in irreconcilable conflict. Her intimate

friends and companions, then also passengers on the car, discribed his actions as both harsh and violent; others, less partisan and whose opportunity to observe was equally as good, testify to the contrary.

While defendant relies for reversal of the judgment against it, on several assignments of error, those challenging rulings on instructions require most consideration. It contends plaintiff's instructions 1 to 9 inclusive were erroneous. By number 1 the the jury were told, "as a matter of law", without any direction how to apply it, "that it is the duty of a railway company to use the highest degree of care and caution for the safety and security of passengers, while being transported". That, of course, is, as the instruction says, "a matter of law" binding on all passenger carriers. But it is a mere abstract legal proposition, which the jury, without any aid or direction, was to interpret and apply. Such instructions afford the jury an opportunity to draw erroneous conclusions, and to misapply the propositions announced to the facts of the case on trial. Repeatedly this court has criticized instructions of this character. Our reports are full of such criticisms. We cite the following only: *Fisher* v. *Railway Co.*, 39 W. Va. 373; *Webb* v. *Packet Co.*, 43 W. Va. 800; *Parker* y. *Association*, 55 W. Va. 134; *Oil Co.* v. *Bartlett*, 62 W. Va. 700; *Squilache* v. *Coal & Coke Co.*, 64 W. Va. 337.

But, while defendant was required to use a high degree of care for plaintiff's safety while in its custody as a passenger, an equally imperative duty devolved on it to preserve order and decorum on the car. For this purpose the statute, §31, ch. 145, Code 1913, has conferred upon the officers of common carriers "all the powers of conservators of the peace, and who as such may eject—and for that purpose employ all the force reasonably necessary—all persons, whether passengers or not, who are guilty of riotous or disorderly conduct; and not only those thus offending, but also those who unlawfully intervene to prevent the performance of this statutory duty. So that, if, as the testimony tended to show, plaintiff's husband was intoxicated and disorderly, the conductor had ample authority to remove him, and to this end to cause plaintiff to change her position in the car, provided only that he exercised

no more force than was reasonably necessary to effect the husband's ejection. Under these conditions, defendant's duty did not require it to convey any disorderly or riotous passenger to his destination, though in other respects the passenger may have complied with all essential requirements of the contract of transportation. While it is true defendant's instruction number 4 advised the jury of the conductor's authority under the statute to eject the husband, that did not prevent a misconception of the unconditional and unexplained legal proposition announced in plaintiff's instruction.

Again, the jury was told, by plaintiff's instruction number 2, that it was the duty of the company to employ competent and prudent servants, and, so far as possible, to protect passengers on its cars from unlawful assaults, not only by other passengers but by its servants. While this instruction is also amenable to the same criticism as the first, being merely abstract, there was neither pleading nor proof warranting it. The declaration contained no explicit charge of duty devolving on defendant in the employment of its agents or servants, nor the breach of such duty; and the record is void of any direct evidence of their incompetency. The only averments urged by plaintiff as sufficient to sustain the instruction is the charge in both counts that defendant's duty required it "to use due and proper care and skill in and about carrying the plaintiff", and its failure to use such care and skill, with the further averment that the conductor "without any just cause or excuse violently and forcibly grasped the said plaintiff * * and threw her with great force against a seat on the opposite side of the car", whereby "she was greatly bruised, wounded and injured". These averments do not raise an issue as to the conductor's competency, nor give notice of a challenge of his qualification as defendant's representative; and, if they did raise such issue and impart such notice, there is no proof of any lack of competency on his part, unless we are to infer it from the manner in which he exercised his official functions—an inference not justified by any competent authority. Plaintiff can recover only upon proof showing a breach of the master's duty in the employment of competent servants. *Straw Board Co.* v.

*Smith,* 94 Md. 19; *Shaw* v. *Hollenback,* 21 Ky. L. 561, 55 S. W. 686. The issue here, however, was not as to the conductor's competency, but rather as to his tortious conduct towards plaintiff, and the probable effect of the instruction was to divert the attention of the jury from the real issue. An instruction on a theory not presented by the pleadings or supported by the evidence is erroneous. *Kunst* v. *Grafton,* 67 W. Va. 20; *Henry* v. *Davis,* 7 W. Va. 715; *Barber* v. *Insurance Co.,* 16 W. Va. 658; *Jenkins* v. *Railroad Co.,* 61 W. Va. 597; *Levy* v. *Insurance Co.,* 58 W. Va. 546; *Railroad Co.* v. *Forgey,* 105 Va. 599; *Railroad Co.* v. *Lee,* 106 Va. 32.

Plaintiff's instructions 3 and 4 told the jury that if they believed from the evidence the conductor, while in the discharge of his duties, ''without cause, excuse or provocation, did strike, assault, beat or mistreat the plaintiff'' while a passenger, by reason whereof she was injured, they should return a verdict in her favor. These instructions contained terms and phrases the tendency of which evidently was to excite an undue prejudice against the conductor and his employer. For, while some of the witnesses called by plaintiff testified that the conductor forcibly ''grasped'' and violently threw her across the aisle, not even the most partisan of them appeared willingly to say the conductor ''did strike or beat'' her. The use of these terms in consecutive instructions, under the circumstances of this case, may have unduly inflamed the minds of the jury; and, besides, such use was not, as noted, authorized by the testimony. Instructions should not give undue emphasis to particular facts of any case. These instructions likely had that effect.

No serious objection is urged against plaintiff's instruction number 5; and we perceive none, except in so far as it relates to plaintiff's recovery ''for the loss she has incurred of future separate earnings or business'', on which the proof may be more conclusive on the new trial which we must award by reason of other instructions discussed.

To say to the jury, as did plaintiff's sixth instruction, that if they found from the evidence plaintiff, without fault on her part, was seized by the conductor and forcibly thrown against the end of the seat and injured, and that his act

"was malicious, wanton, willful or reckless, then, in addition to the actual damages she suffered for which she may be entitled to recover, the defendant is *liable* for exemplary or punitive damages", we think was manifestly erroneous. First, the juxtaposition of the phrases ''she may be entitled'' and ''the defendant is liable'', as used in the instruction, would, and perhaps did, tend to lead the minds of the jury to the conviction that plaintiff's right to compensatory damages and defendant's liability for punitive damages were so interdependent that both or neither ought to be included in their verdict. But secondly and clearly, we think the use of the word ''liable'' renders the instruction plainly objectionable. As defined by Webster and by Anderson's and Black's law dictionaries, ''liable'' means ''bound or obliged in law or equity''; ''responsible, answerable, or compellable to make satisfaction, compensation or restitution''; ''obligated''; ''accountable for or chargeable with'', ''as liable for money''. Substituting any one or more of these equivalent terms in lieu of ''liable'', the instruction in effect told the jury that, in addition to the compensatory damages to which plaintiff might be entitled, the defendant was bound in law or compellable to make restitution, satisfaction, compensation, or obligated, chargeable with or acountable for exemplary or punitive damages, when, as a general rule, the allowance of damages of the character so designated is not a matter of legal right or liability, but merely discretionary with the jury. *Fink* v. *Thomas,* 66 W. Va. 487, 492. A discretion with which the courts may not interfere, even upon a motion for a new trial, except where the allowance is clearly excessive. *Joplin* v. *Improvement Co.,* 70 W. Va. 70; *Pennington* v. *Gillaspie,* 66 W. Va. 643; *Carpenter* v. *Hyman,* 67 W. Va. 4; *Shires* v. *Boggess,* 77 S. E. 543; *Claiborne* v. *Arrington,* 46 W. Va. 365; *Hawk* v. *Pidgway,* 37 Ill. 473; *Railway Co.* v. *Rector,* 104 Ill. 296; *Sheik* v. *Robson,* 64 Ia. 146; *Thill* v. *Pohlman,* 76 Ia. 638.

But we do not concur in the view, urged by defendant, that exemplary damages may not in any event be awarded plaintiff should the conduct of its officer appear to have been malicious, wanton, willful or reckless. He was its represent-

ative in control of its car, charged with the duty of preserving order and enforcing its rules and regulations, and clothed even with the .powers of a conservator of the peace. If his conduct was wanton, willful or malicious, he was at the time acting clearly within the scope of his authority as defendant's agent. *Gillingham* v. *Railroad Co.*, 35 W. Va. 603. "A master is responsible for the torts of his servant done with a view to the furtherance of the master's business, whether the same be done negligently, wantonly or willfully, but within the scope of his employment". 14 Am. & Eng. Enc. Law 817. In *Ricketts* v. *Railway Co.*, 33 W. Va. 433, relied on by defendant, the assault was made on a passenger by a subordinate, a brakeman, while not engaged in the discharge of his regular duties and employment. Nor does the authority conferred by § 31, ch. 145, Code, relieve the carrier from liability for the wrongful acts of its authorized agents while engaged in the proper performance of their official functions. *Gillingham* v. *Railroad Co.*, *supra*.

Viewed in the light of the testimony, we perceive no error in plaintiff's instructions 7 and 8; nor does defendant point out any objection thereto, except that part of 7 relating to permanent injuries, of which it claims there is want of proof. But we think the proof sufficiently warranted the giving of the instruction. Nor do we perceive in what respect defendant was prejudiced by the court's modification of defendant's instruction 2, which, as requested, omitted to include all the evidence introduced in determining whether the "evidence in plaintiff's favor outweighs or overbears in some degree the weight of the evidence in favor of defendant", in which respect the instruction was rightly amended. But we think that part of instruction 4 (as amended) which makes the right of ejection for disorderly conduct to depend solely on the safety of other passengers or interference "with their reasonable comfort or convenience", is an unwarranted limitation of the power of removal. A passenger's conduct may warrant his removal, though neither the personal safety nor the reasonable convenience or comfort of other passengers be disturbed; and his conduct may not warrant his ejection though it may grievously annoy the supersensitive. If this

restriction is to prevail, what procedure must the conductor adopt to determine whether the safety of his passengers is endangered or their comfort or convenience disturbed? Shall he ascertain by inquiry, and be governed by a majority vote of his passengers, including those charged with disorderly conduct? The rule stated in the instruction as amended is inherently vicious and in contravention of the statute cited. We think the instruction should have been given without amendment, because it fully and properly stated the law on the subject.                                      ,

Defendant's instruction 8, without the added amendment, did not correctly propound the law upon the question of defendant's liability for the acts of its agents performed within the scope of their employment. Its instruction 11 was properly amended; and instruction 13 was, for reasons stated as to number 8, erroneous, both before and after amendment. The statute authorizes ejection of a person, whether a passenger or not, who "behaves in a riotous or disorderly manner".

The only substantial objection to the interrogatories propounded to Goldie Palmer on rebuttal, and introduced by the statement that Mr. Mills (the conductor) "has testified in this case that Mrs. Wilhelm placed her hand over her husband's mouth and told him to keep quiet", is the request to "state whether or not that is true or false". The witness is thus invited to say whether Mills testified to a falsehood or to the truth, a direct answer to which she skillfully evaded, as any other reasonable witness would do, and by her answer said: "I never saw her put her hand over his mouth". The other questions of like character were propounded to her, to none of which did she say he testified falsely. Apart from the form of the interrogatories, we see no objection to the testimony, nor to the time of its introduction; and the cautious answers thereto did not prejudice defendant.

But, in view of the modification of defendant's instruction upon the conductor's right of ejection for disorderly behavior, it is difficult to understand the reason for the court's rejection of the testimony offered by defendant to show complaint by a passenger based on Wilhelm's disorderly behavior. For if the exercise of such right rests only upon

the annoyance or safety of other passengers, it was competent to prove some one or more passengers complained. That plaintiff or her husband did not hear the conversation did not render proof of it incompetent. We think the evidence was improperly rejected; because, to that extent, a favorable coloring was given to the necessity for the acts and conduct of the conductor in the ejection of David Wilhelm and in causing plaintiff's change from the position she occupied.

As for the errors noted a new trial must be awarded, nothing need be said upon the assignment of error based on newly-discovered evidence.

The judgment will be reversed, the verdict set aside, and a new trial awarded to defendant.

*Reversed and Remanded.*