557 S.E.2d 801

FARMERS AND MECHANICS MUTUAL INSURANCE COMPANY OF WEST VIRGINIA, Plaintiff below, Appellee,

v.

Gerald COOK and Brenda Cook, Defendants below, Appellees,

Leah D. Buckler, Administrator of the Estate of Homer G. Buckler, Deceased, Defendant below, Appellant.

Farmers and Mechanics Mutual Insurance Company of West Virginia, Plaintiff below, Appellee,

v.

Gerald Cook and Brenda Cook, Defendants below, Appellants,

Leah D. Buckler, Administrator of the Estate of Homer G. Buckler, Deceased, Defendant below, Appellee.

Nos. 29841, 29842.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 7, 2001.

Decided Dec. 10, 2001.

Tammy Mitchell Bittorf, Esq., Layva, Bittorf & Santa Barbara, P.L.L.C., Martinsburg, West Virginia, Attorney for Farmers and Mechanics Mutual Insurance Company of West Virginia.

Daniel R. James, Esq., Keyser, West Virginia, Attorney for Gerald and Brenda Cook.

George I. Sponaugle, II, Esq., Sponaugle & Sponaugle, Franklin, West Virginia, Attorney for Leah Buckler.

STARCHER, Justice:

In this case from the Circuit Court of Hardy County, we address a situation where a wife, in the defense of her husband, shot and killed a third-party aggressor. The wife has been acquitted of any criminal responsibility, but the alleged aggressor's widow has sued the couple for wrongful death.

The couple gave notice of the lawsuit to their homeowners' insurance company. The homeowners' insurance company has refused to provide liability coverage or a legal defense to the homeowners, citing to an "intentional acts" exclusion in the policy. The insurance company does not contest that the homeowners acted together in self-defense, but does, nevertheless, contend that the shooting of the third party was intentional, and as such it could be expected that there would be bodily injury. The circuit court, in an order dated December 27, 2000, agreed with the insurance company and denied the homeowners a right to coverage and a right to a legal defense.

As set forth below, we reverse the circuit court. We conclude that when an individual acts in self defense or in defense of another, an insurance company may not rely upon an intentional acts exclusion to deny coverage or a legal defense.

## I.

### *Facts & Background*

The instant case is a declaratory judgment action filed by an insurance company, appellee Farmers and Mechanics Mutual Insurance Company of West Virginia ("Farmers and Mechanics"), against the purchasers of a homeowners' liability insurance policy, appellants Gerald and Brenda Cook, and against appellant Leah Buckler, an individual who has sued the Cooks for the wrongful death of her husband, Homer Buckler.

The circumstances underlying the instant action were meticulously discussed by this Court in a previous criminal appeal involving Brenda Cook, styled *State v. Cook*, 204 W.Va. 591, 515 S.E.2d 127 (1999). Additional discovery was conducted in the instant declaratory judgment action to supplement the story. We draw our discussion of the facts from both of these sources.

Mr. and Mrs. Cook owned a home and a tract of land in Moorefield, West Virginia. The Cooks were repeatedly harassed and threatened by neighbors due, in part, to the Cooks' placement of a fence and rocks along the edge of their property bordering Hickory Ridge Road. At various times, the fence was torn down, roofing nails were placed in the Cooks' driveway, and piles of rocks and dirt dumped on their property.

One of the individuals who harassed and threatened the Cooks was Homer Buckler. Mr. Buckler was a huge man, standing 6 feet, 4 inches and weighing in excess of 300 pounds. The Cooks repeatedly sought the help of law enforcement authorities to stop the intimidation by Mr. Buckler, to no avail. For example, after the Cooks' fence was torn down, the sheriff investigated and spoke with Mr. Buckler, and as a result, Mr. Buckler agreed to apologize to the Cooks. However, instead of apologizing, Mr. Buckler visited the Cooks and threatened to kill them if they ever called the authorities again regarding his conduct.

On May 7, 1997, Mrs. Cook spoke with a state trooper by telephone about an investigation into the vandalism of the Cooks' nearby cabin. The trooper indicated he was going to come out to the area and speak to Mr. Buckler about the matter. Shortly after the conversation ended, Mrs. Cook heard a truck outside her house, and looking outside saw Mr. Buckler throwing rocks onto her property in the direction of Mr. Cook.

Mr. Cook—who was 5 feet, 6 inches tall and weighed 140 pounds—approached Mr. Buckler and asked that he not throw rocks on his property. At the same time, Mrs. Cook loaded a shotgun and walked outside, fired a warning shot in the air, and then hurried to her husband's side. Mrs. Cook contends she asked Mr. Buckler to leave, and told him she had already called the police. Mr. Buckler immediately looked at Mr. Cook and said, "You're a G—d—— dead man. I warned you, I told you never to call them."

Witnesses indicate that Mr. Cook began to walk away, but that Mr. Buckler pursued and attacked him. Mr. Cook responded by swinging his fist at Mr. Buckler; Mr. Buckler threw Mr. Cook to the ground and began beating him.

As Mr. Buckler beat Mr. Cook, Mrs. Cook held the shotgun in one hand and tried to pull Mr. Buckler off her husband. Mr. Buckler paused long enough to strike Mrs. Cook and rip her shirt open. Mrs. Cook again plead with Mr. Buckler to stop, but she was ignored.

Mrs. Cook claimed she was afraid her husband would be killed, so she pointed the shotgun at Mr. Buckler's right arm. She testified in a deposition that she "didn't really aim it, I just, it was close enough to where the barrel would have just, the shot would have like just grazed maybe the side of his arm." As Mrs. Cook fired, Mr. Buckler raised up and raised his right arm, causing the shot to land under his right armpit. Mr. Buckler later died of his injuries, and Mrs. Cook was charged with and convicted of second-degree murder.

In *State v. Cook, supra,* Mrs. Cook appealed her conviction to this Court. After carefully examining the record, we concluded that Mrs. Cook had established that she acted in defense of her husband Gerald in shooting Mr. Buckler, and that the State had failed to rebut this defense beyond a reasonable doubt. We reversed Mrs. Cook's conviction

and remanded the case for the entry of a judgment of acquittal.

Subsequent to this Court's opinion, Mrs. Buckler filed a wrongful death action against the Cooks for the death of her husband. The Cooks sought liability insurance coverage and defense counsel for the wrongful death action from their homeowner's insurance carrier, appellee Farmers and Mechanics.

Farmers and Mechanics filed the instant declaratory judgment action seeking a declaration that there was no coverage and no duty to provide a defense under the homeowner's insurance policy because of an exclusion for "intentional acts." The policy excludes coverage for "bodily injury or property damage ... which is expected or intended by the insured."

After discovery was conducted by the parties, upon motion the circuit court granted summary judgment to Farmers and Mechanics. In an order dated December 27, 2000, the circuit court concluded that Mrs. Cook expected and intended to shoot Mr. Buckler. Furthermore, the circuit court held that it could be inferred that she expected and intended to cause Mr. Buckler bodily injury, because whether a policyholder intends to cause harm to another is viewed from an objective, not subjective, viewpoint. In other words, the circuit court concluded that a reasonable, prudent person would expect that firing a shotgun at another person would cause bodily injury—regardless of what Mrs. Cook contended her intentions and expectations truly were. Lastly, the circuit court ruled that while Mrs. Cook's self-defense argument might absolve her of criminal liability, "[a] claim of self-defense will not defeat or diminish the intent behind the act of the insured for purposes of insurance coverage." Accordingly, the circuit court found that because of the intentional acts exclusion, Farmers and Mechanics had no duty to provide a defense to Brenda Cook, and no duty to provide coverage under her homeowners' insurance policy.

The circuit court also found that Mr. Cook had "approached and antagonized" Mr. Buckler, and thereby intentionally and willfully initiated a fight with Mr. Buckler. The circuit court also found that Mrs. Buckler's complaint "arguably alleges" that Mr. Cook had acted to "create a scenario which would allow and permit his wife ... to shoot Homer Buckler under the guise of self-defense." Accordingly, the circuit court concluded that Mr. Cook's actions "entail[ed] a conscious and intentional element, removing the same from the scope of coverage afforded by the Farmers and Mechanics Policy."

The Cooks and Mrs. Buckler now appeal the circuit court's December 27, 2000 order.

## II.

### Standard of Review

■■■ This Court reviews a circuit court's entry of a declaratory judgment *de novo*, since the principal purpose of a declaratory judgment action is to resolve legal questions. Syllabus Point 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). When a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or a jury, just as issues of fact are tried and determined in other civil actions. *W.Va.Code*, 55–13–9 [1941].[1] *See also*, Syllabus Point 16, *Mountain Lodge Association v. Crum & Forster Indem. Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001) ("West Virginia Code § 55–13–9 and Rules 38, 39 and 57 of the Rules of Civil Procedure, read and considered together, operate to guarantee that any issue triable by a jury as a matter of right in other civil actions cognizable by the circuit courts shall, upon timely demand in a declaratory judgment proceeding, be tried to a jury."). Any determinations of fact made by the circuit court or jury in reaching its ultimate judgment are reviewed under a clearly erroneous standard. *Cox*, 195 W.Va. at 612, 466 S.E.2d at 463.

1. *W.Va.Code*, 55–13–9 [1941] states:
When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same

manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

■ In this case we are asked to review the circuit court's interpretation of an insurance contract. In Syllabus Point 2 of *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999), we stated that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998).

## III.

### Discussion

In the instant case, an insurance company seeks to avoid responsibility to a policyholder under an insurance policy through the operation of an exclusion. We therefore must first discuss our guidelines for the judicial construction of insurance policy exclusions.

■ When a policyholder shows that a loss occurred while an insurance policy was in force, but the insurance company seeks to avoid liability through the operation of an exclusion, the insurance company has the burden of proving the exclusion applies to the facts in the case. Syllabus Point 7, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syllabus Point 5, *Id.* However, whenever a policy is being construed or applied, the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syllabus Point 1, *Soliva v. Shand, Morahan & Co.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).

■ An insurance company must meet a more rigorous standard to avoid its obligation to defend a policyholder. The duty to defend a policyholder may, by virtue of the language contained in the insurance policy, be broader than the obligation to indemnify the policyholder against some risk.[2] The insurance company may be obligated to provide a defense "even though the suit is groundless, false, or fraudulent." *Aetna Casualty & Surety Co. v. Pitrolo*, 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986). As we stated in the sole syllabus point of *Farmers & Mechanics Mut. Fire Ins. Co. of West Virginia v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994):

> When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide.

If the facts underlying the complaint filed by a plaintiff against a policyholder are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy," the insurance carrier must provide a defense. *Pitrolo*, 176 W.Va. at 194, 342 S.E.2d at 160.

The policy in the instant case excludes from coverage any "bodily injury or property damage ... which is expected or intended by the insured." Farmers and Mechanics contends that both Brenda and Gerald Cook acted intentionally to cause Homer Buckler to be shot, and intended, or should have reasonably foreseen and expected, that he would be harmed by their actions. Accordingly, Farmers and Mechanics claims it has no duty to indemnify the Cooks under the policy, and no duty to provide the Cooks with a defense to Mrs. Buckler's wrongful death lawsuit.

**2.** In the instant case, the Farmers and Mechanics' policy provided to the Cooks contains the following language:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> * * *

2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

In this declaratory judgment action, however, the appellants argue that Brenda and Gerald Cook did not intend or expect to cause harm to Mr. Buckler. Instead, they argue that Mr. Cook was attacked, that Mrs. Cook intended to defend her husband, and that, as a matter of law, any act done by Mrs. Cook in self-defense or in defense of another was expected or intended to prevent harm to oneself or another—and conversely, not expected or intended to cause bodily injury to another. The appellants therefore argue that the Cooks are entitled to coverage under the policy.

We begin our examination of the parties' arguments by considering the language of the "intentional acts" exclusion, and how the exclusion is applied by courts.

■ Courts are generally in agreement that under an intentional acts exclusion, "a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage." *State ex rel. Davidson v. Hoke,* 207 W.Va. 332, 339, 532 S.E.2d 50, 57 (2000) (Starcher, J., concurring). Both an intentional act and an intended or expected consequence must be present before the exclusion operates to void coverage. *See generally,* "Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured," 31 A.L.R.4th 957 (1984).

Furthermore, under the intentional acts exclusion, courts generally look to the subjective intent of the policyholder—the policy language specifically says to determine if the loss was "expected or intended *by the insured.*" Construing the language of the exclusion in the instant case according to its plain, ordinary meaning, it is apparent that courts should not examine an intentional acts exclusion with an "objective" standard in mind—whether the resulting injury or damage was reasonably foreseeable to a reason-

able person is largely irrelevant. "The question to ask is, 'Did this policyholder expect or intend the injury or property damage?'" *State ex rel. Davidson v. Hoke,* 207 W.Va. at 339, 532 S.E.2d at 57. The Farmers and Mechanics policy does not set forth an objective standard, and a subjective standard for determining the policyholder's intent "is supported by the fact that the 'neither expected nor intended' language is followed by the phrase '*from the standpoint of the insured.*'" *Smith v. Hughes Aircraft Co. Corp.,* 783 F.Supp. 1222, 1236 (D.Ariz.1991). *See also, Queen City Farms, Inc. v. Central National Ins. Co. of Omaha,* 126 Wash.2d 50, 882 P.2d 703 (1994) ("unexpected and unintended" requirement is determined under a subjective standard because policy sets out no objective standard, and average purchaser would reasonably anticipate that unintended damages (in this case, pollution), even though precipitated by intentional act, would be insured).

■ We therefore conclude that under an intentional acts exclusion, a policyholder may be denied coverage under the policy only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting injury or damage. When an intentional acts exclusion uses language to the effect that insurance coverage is voided when the loss was "expected or intended by the insured," courts must use a subjective rather than objective standard for determining the policyholder's intent.

These standards alone, however, do not fully assist us in our resolution of the instant case, because the question raised by the appellants focuses on the meaning of the phrase "expected or intended" in the context of a policyholder acting in self-defense. The question at hand is this: does a person who acts in self-defense or in defense of another really act intentionally, and with an intention to cause bodily injury?[3] A majority of

---

**3.** We note at this point what is *not* an issue in the instant case: whether Mrs. Cook intended to act in self-defense or in defense of her husband, but negligently or improperly used excessive force. The parties have not raised or briefed this issue. We therefore, in the discussion, do not consider or resolve those problems that might arise where a policyholder is alleged to have acted with ex-

cessive force. *Compare Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 359–60, 694 P.2d 181, 189–90 (1984) ("If the jury finds that Meere acted in self-defense with no basic desire or intent to harm Pruitt, but negligently used force greater than necessary in self-defense, Meere may be liable for damages to Pruitt. In such an event, the true situation is one of negligence ...

courts examining this question resolve the dispute over whether there is insurance coverage based upon inherent distinctions in the quality of the policyholder's "intent" to produce consequences. Courts find that when a policyholder acts with wrongful intent, an insurance company may properly deny coverage; but when that "wrongful" element is lacking, courts find that an intentional acts exclusion cannot be used to deny coverage.

In West Virginia, we have considered cases involving the intent of a policyholder to cause harm on several occasions. This Court has repeatedly held that when the evidence established that a policyholder acted with a *wrongful* intent, there was no coverage under an insurance policy because of an intentional acts exclusion.

For example, in *Municipal Mutual Ins. Co. v. Mangus,* 191 W.Va. 113, 443 S.E.2d 455 (1994), a policyholder with a mental illness deliberately shot a neighbor over a property line dispute. When the neighbor sued, the policyholder's insurance company denied coverage under an intentional acts exclusion. After examining the record, we concluded that the policyholder had a "sufficient degree of awareness" that he was shooting his neighbor—although the policyholder "suffered from clinical depression or delusions in certain aspects of his life, he fully understood what he was doing at the time he shot" the neighbor. 191 W.Va. at 115–116, 443 S.E.2d at 457–58. Because the policyholder knew he was acting with a wrongful intent, and was intending to cause his neighbor harm, we affirmed the denial of coverage.

Similarly, in *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988), a policyholder was accused of sexually abusing a child, and sought coverage from his homeowner's insurance provider. The insurance company argued that it had no duty to defend or provide coverage to the policyholder because of an "intentional injury" exclusion. We concluded that when a policyholder wrongfully engages in sexual misconduct, the act is so "*inherently* injurious, or 'substantially certain' to result in some injury, that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that *no* harm was intended to result from the act." 180 W.Va. at 379, 376 S.E.2d at 585. We therefore held that because of the wrongful—in fact, criminal—nature of the policyholder's actions, the intent of the policyholder to cause injury would be inferred as a matter of law, and coverage could therefore be denied under the intentional acts exclusion. *See also, Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990) (sexual assault by bus driver against infant passenger was not an "accident" which the "insured neither expected or intended" under bus company's insurance policy, and coverage could be denied); *Smith v. Animal Urgent Care, Inc.,* 208 W.Va. 664, 542 S.E.2d 827 (2000) (because of an intentional acts exclusion, there was no coverage for employer under commercial general liability policy when employee alleged employer wrongfully engaged in sexual harassment).

Somewhat closer to the facts in the instant case is *Baber v. Fortner,* 186 W.Va. 413, 412 S.E.2d 814 (1991). In that case, the policyholder shot and killed his wife's boyfriend while the policyholder was sitting inside his automobile. The policyholder contended that he acted in self-defense, claiming he saw a weapon in the boyfriend's hand; a jury rejected his contention and convicted him of voluntary manslaughter. When the policyholder was sued for the boyfriend's wrongful death, the policyholder's automobile liability insurance company refused coverage, in part because of an intentional acts exclusion.

The policyholder in *Baber* argued that his voluntary manslaughter conviction was not a conclusive determination of his intent, but we disagreed. We concluded that the policyholder's conviction "constituted a judicial rejection of his self-defense plea which precludes the assertion that his act was anything other than intentional." 186 W.Va. at 418,

and it is ... within the coverage of the policy and not within the exclusion.") *with State Farm Fire & Cas. Co. v. Marshall,* 554 So.2d 504 (Fla. 1989) (*per curiam* ) (where jury found policyholder's actions were not "a reasonable use of force to prevent imminent death or great bodily harm to himself," court found coverage was precluded by the intentional acts exclusion).

412 S.E.2d at 819. In other words, because of his criminal conviction the policyholder was collaterally estopped from claiming that his act and its consequences were anything but intentional.

The instant case presents a situation substantially different from that found in the above cases, namely that the policyholder did not clearly act with a *wrongful* intent or criminal intent. Instead, substantial evidence indicates that the policyholder—who has been acquitted of criminal responsibility on the basis of self-defense—acted solely with an intent to prevent injury to herself and to her husband. Whether such a deliberate act of self-defense triggers the "intentional act" exclusion in an insurance policy is an issue of first impression in West Virginia.

 It is axiomatic that, to establish that an individual's conduct was intentionally tortious, a plaintiff must prove more than that the individual acted with an intent to cause injury. The plaintiff must prove, directly or indirectly, that the individual's conduct was in some way prohibited. As one commentator noted:

> The intent with which tort liability is concerned is not necessarily a hostile intent, or desire to do any harm. *Rather it is an intent to bring about a result which will invade the interest of another in a way that the law forbids.* The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good.

*Prosser & Keeton on Torts*, § 8 at 36 (5th Ed.1984)(emphasis added). Thus, in order to trigger an intentional acts exclusion, the policyholder must intend to bring about a "result which will invade the interest of another in a way that the law forbids." In sum, the poli-

cyholder must intend "a result that is wrongful in the eye of the law of torts." *Deakyne v. Selective Insurance Co. of America*, 728 A.2d 569, 573 (Del.Super.1997).

In West Virginia, we have plainly recognized that individuals are permitted to use a reasonable degree of force to defend themselves or others. *See Fink v. Thomas*, 66 W.Va. 487, 66 S.E. 650 (1909) (defense of others); *Shires v. Boggess*, 72 W.Va. 109, 77 S.E. 542 (1913) (self-defense); *Reynolds v. Griffith*, 126 W.Va. 766, 30 S.E.2d 81 (1944) (self-defense). While the individual may be acting "intentionally," lashing out against an attacker, the individual is not invading the interests of the attacker in a way that the law forbids. To the contrary, the public policy of this State favors the right of individuals to act in defense of themselves and others. *See Feliciano v. 7–Eleven, Inc.*, 210 W.Va. 740, 749–750, 559 S.E.2d 713, 722–723 (2001) ("[A]n individual's right to self-defense in West Virginia has been sufficiently established in and clarified by our State's common law so as to render it a substantial public policy . . . and will sustain a cause of action for wrongful discharge."). The individual acts primarily to prevent harm—any harm caused to the attacker is incidental.[4]

A growing majority of courts examining this issue conclude that when a policyholder acts in self defense,

> the actor is not generally acting for the purpose of intending any injury to another but, rather, is acting for the purpose of attempting to prevent injury to himself. It can easily be said that such act, though resulting in bodily injury to another, was neither expected nor intended within the terms of the policy . . . An injury resulting from an act committed by an insured in

---

4. This is not to say that factual questions may not exist regarding whether the individual truly acted in self-defense, or was an aggressor. For example, in *Smith v. Sears, Roebuck & Co.*, 191 W.Va. 563, 447 S.E.2d 255 (1994) (*per curiam*), the policyholder and a co-worker were involved in a fist fight in the parking lot of their employer. The policyholder's liability insurance company refused to provide coverage under an intentional acts exclusion. The policyholder, however, contended "that his swing at the plaintiff was in self defense and that no bodily harm was intended." 191 W.Va. at 564, 447 S.E.2d at 256. We concluded that the "determination of insurance coverage depends on the resolution of factual questions concerning what happened," 191 W.Va. at 565, 447 S.E.2d at 257, and left the case to the circuit court for final resolution of those factual questions.

self-defense is not, as a matter of law, an expected or intended act. *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 192–93, 313 N.W.2d 636, 640–41 (1981). After examining the numerous authorities on this issue,[5] we find the reasoning supporting this conclusion to be persuasive.

■■■ Accordingly, we hold that a loss which results from an act committed by a policyholder in self-defense or in defense of another is not, as a matter of law, expected or intended by the policyholder. Where a policyholder establishes he or she properly acted in self-defense or in defense of another, the insurance company may not rely upon an intentional acts exclusion to deny coverage.

Our holding today is fully supportive of the reasons behind the insurance industry's adoption of the intentional acts exclusion. The rationale behind the intentional acts exclusion is obvious: insurance companies set their premiums based upon the random occurrence of particular insured events. If a policyholder can consciously, deliberately control the occurrence of these events through the commission of intentional acts, the liability of the insurance company becomes impossible to define. The exclusion therefore prevents individuals from "purchasing insurance as a shield for their *anticipated intentional misconduct.* Without such an exclusion, an insurance company's risk would be incalculable." *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St.3d 78, 81, 491 N.E.2d 688, 691 (1986).

However, when a policyholder is "faced with a harm-threatening situation, the decision to defend one's self is not a choice. It is an instinctive necessity." *State Farm Fire and Cas. Co. v. Poomaihealani,* 667 F.Supp. 705, 708 (D.Haw.1987). "An act of self-defense ... is neither anticipated nor wrongful from the standpoint of the insured. The risk that an insurance company bears ... for an insured who claims to have acted in self-defense is calculable and, from a monetary standpoint, minimal." *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St.3d at 81, 491 N.E.2d at 691.

In the instant case, we believe that the circuit court erred when it rejected outright the Cooks' assertion that they did not intend harm to Mr. Buckler, and concluded that their actions were required to be reviewed under an objective "reasonable person" standard. Instead, the Cooks' actions must be viewed in light of their subjective intent.

■■■ Mrs. Cook contends she did not intend to shoot and kill Mr. Buckler, but instead acted in defense of her husband. The record does not conclusively establish that Mr. or Mrs. Cook acted with wrongful intent toward Mr. Buckler, but instead can be read to show they acted purely in self-defense. In other words, the facts are reasonably susceptible of an interpretation that the claim is not precluded by the intentional acts exclusion and may be covered by the terms of the insurance policy, such that the Cooks are entitled to a legal defense. We therefore find that the circuit court erred, and hold that Farmers and Mechanics is required to provide the Cooks with a defense to the lawsuit filed by Mrs. Buckler.

---

5. Courts which have, in one form or another, indicated that an act of self-defense or defense of others is not excluded from coverage by an "intentional acts" provision include: *Mullen v. Glens Falls Ins. Co.,* 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (Cal.App.1977); *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981); *Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984); *Maxson v. Farmers Ins. of Idaho, Inc.,* 107 Idaho 1043, 695 P.2d 428 (1985); *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St.3d 78, 491 N.E.2d 688 (1986); *State Farm Fire & Cas. Co. v. Poomaihealani,* 667 F.Supp. 705 (D.Haw.1987); *Berg v. Fall,* 138 Wis.2d 115, 405 N.W.2d 701 (1987); *Economy Fire & Cas. Co. v. Iverson,* 445 N.W.2d 824 (Minn.1989), *overruled on other grounds, Ameri-*

*can Standard Ins. Co. v. Le,* 551 N.W.2d 923 (Minn.1996); *Vermont Mut. Ins. Co. v. Singleton,* 316 S.C. 5, 446 S.E.2d 417 (1994); *Jackson v. State Farm Fire & Cas. Co.,* 661 So.2d 232 (Ala. 1995); *Aetna Cas. & Surety Co. v. Cochran,* 337 Md. 98, 651 A.2d 859 (1995); *Allstate Ins. Co. v. Justice,* 229 Ga.App. 137, 493 S.E.2d 532 (1997); *Deakyne v. Selective Insurance Co. of America,* 728 A.2d 569 (Del.Super.1997); *Safeco Ins. Co. of America v. Tunkle,* 997 F.Supp. 1356 (D.Mont. 1998); *Stoebner v. South Dakota Farm Bureau Mut. Ins. Co.,* 598 N.W.2d 557 (S.D.1999). *See also,* "Acts in self-defense as within provision of liability insurance policy expressly excluding coverage for damage or injury intended or expected by insured," 34 A.L.R.4th 761 (1984).

The record in the instant action is otherwise sparse, but suggests that issues remain for a factfinder to resolve regarding whether, in the context of a wrongful death action, the Cooks acted within their legal rights. The Cooks have sufficiently alleged that Mrs. Cook was acting in defense of her husband, so as to trigger the insurance company's duty to provide a defense. But whether the insurance company will be required to indemnify the Cooks for any liability they may have to Mrs. Buckler is a factual issue that must await resolution in the underlying wrongful death action.

Thus, if on the one hand, a trier of fact in the wrongful death action determines that both Mr. and Mrs. Cook *did* act with wrongful intent, and shot Mr. Buckler without legal justification, then the Cooks' intention to cause Mr. Buckler bodily harm will have been proven and Farmers and Mechanics may properly deny coverage under the intentional acts exclusion. *See, e.g., Allstate Ins. Co. v. Justice,* 229 Ga.App. 137, 493 S.E.2d 532 (1997) (whether policy's intentional injury exclusion applied was for jury to decide). On the other hand, if the factfinder determines that the Cooks' conduct was not wrongful, and that they acted in self-defense with no basic purpose to cause Mr. Buckler injury, the exclusion will not apply.[6] *See, e.g.,* Syllabus Points 1 and 2, *Economy Fire & Cas. Co. v. Iverson,* 445 N.W.2d 824 (Minn. 1989) (while an insurance company has a duty to defend a policyholder alleging self defense, "[t]he insurer has no obligation to indemnify because the jury finding of self-defense extinguished liability on the part of the insured.")(*overruled on other grounds, American Standard Ins. Co. v. Le,* 551 N.W.2d 923 (Minn.1996)).

A circuit court should grant a motion for summary judgment "only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). After careful examination of the record, we find that genuine issues of fact remain regarding whether, in the context of the wrongful death action, the Cooks acted in self-defense, and thereby, whether they are entitled to liability insurance coverage. We therefore conclude that the circuit court erred in granting summary judgment to Farmers and Mechanics, and the judgment must be reversed.

## IV.

### *Conclusion*

The circuit court's December 27, 2000 order is reversed, and the case is remanded to the circuit court for further proceedings.

Reversed and Remanded.

---

**6.** Of course, if it is established that the Cooks acted in self-defense, then we would anticipate that the judgment in the underlying wrongful death action by Mrs. Buckler would be entered in favor of the Cooks, and Farmers and Mechanics would therefore have no duty under the policy to indemnify the Cooks.

In the instant case, it is unclear whether Mrs. Buckler alleges that the Cooks properly intended to act in self-defense, but then negligently acted with excessive force. As we indicated previously (*see supra,* footnote 3), the parties have not briefed, and we do not consider, whether liability insurance coverage would be available in these circumstances.