617 S.E.2d 797

**COLUMBIA CASUALTY COMPANY,**
Plaintiff,

v.

**WESTFIELD INSURANCE COMPANY,**
Defendant.

No. 31941.

Supreme Court of Appeals of West Virginia.

Submitted: May 24, 2005.

Filed: June 10, 2005.

Jeffrey M. Wakefield, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, for Plaintiff.

Brent M. Kesner, Esq., Ellen R. Archibald, Esq., Kesner, Kesner & Bramble, Charleston, for Defendant.

Justice STARCHER delivered the Opinion of the Court.

STARCHER, J.

In the instant case we conclude that under a liability insurance policy issued to the Ran-

dolph County Commission, there is potential insurance coverage for claims made against the commission by the estates of two inmates who committed suicide in the Randolph County jail—because, when the policy language is applied to and from the perspective or standpoint of the county commission, the deaths were "occurrences" under the insurance policy's terms.

## I.

### Facts & Background

The United States Court of Appeals for the Fourth Circuit has certified a question of law to this Court that asks whether two Randolph County jail inmate suicides were "occurrences" under a liability insurance policy issued to the Randolph County Commission.

The two suicides occurred in 1998 and 1999. The estates of the deceased inmates each sued the Randolph County Sheriff ("the sheriff"), and also the Randolph County Commission ("the commission"), claiming that the sheriff and commission—because of their allegedly wrongful acts and omissions that allegedly permitted and led to the suicide deaths—were legally required to pay wrongful death damages to the inmates' estates.

Columbia Casualty Company ("Columbia"), which had issued a liability insurance policy to the sheriff, undertook a defense of the lawsuits for both the sheriff and commission (the commission was also an insured for limited purposes under the sheriff's Columbia policy). Columbia ultimately settled both estates' claims against the sheriff and the commission.[1] Meanwhile, Westfield Insurance Company ("Westfield"), which had issued a general liability insurance policy to the county commission, denied coverage and refused to provide a defense to the commission.

The instant case arose when Columbia sued Westfield in the United States District Court for the Northern District of West Virginia, seeking a declaratory judgment that Westfield was wrong in denying coverage to the commission, and that consequently West-field is liable to Columbia for a portion of the money expended by Columbia in defending and settling the two cases.

A number of issues involving the insurance policies issued by Columbia and Westfield have arisen in the federal court litigation between the two insurance companies. The District Court found that one issue was dispositive on the issue of Westfield's duty to defend and provide liability coverage for the commission in the two lawsuits: whether the two deaths by suicide were "occurrences" under the Westfield policy. The District Court concluded that the deaths by suicide were not occurrences that would trigger coverage under the Westfield liability insurance policy, and granted summary judgment for Westfield.

An appeal to the Fourth Circuit followed, and that court certified the following question to this Court:

Under West Virginia law, were the suicidal deaths of Robinson and Everson [the inmates], either or both, "occurrences" within the meaning of the Westfield Insurance Company commercial general liability policy at issue in this case?

We have before us the briefs from the appeal to the Fourth Circuit, the briefs filed by the parties in this case, and some associated documents/exhibits; all of which provide a sufficient basis for this Court to address the certified question transmitted from the Fourth Circuit.

## II.

### Standard of Review

■■■ The interpretation and application of an insurance policy in light of undisputed facts is a matter of law that we address *de novo.* Syllabus Point 1, *Tennant v. Small-wood,* 211 W.Va. 703, 568 S.E.2d 10 (2002). Similarly, review of certified questions from a federal court is *de novo.* Syllabus Point 1, *Light v. Allstate Ins. Co.,* 203 W.Va. 27, 506 S.E.2d 64 (1998).

## III.

### Discussion

Discussions in judicial opinions of insurance coverage issues often involve parsing

---

1.  One claim was settled for $400,000.00, and one was settled for $175,000.00.

the convoluted and confusing language of insurance policies. There is an elevated risk in such discussions of making similarly convoluted and confusing judicial statements— particularly when the statements are taken outside of the boundaries of the case in which they are made. With that awareness and caution, we turn to discussing the issue before us.

The Westfield insurance policy in question defines "occurrence" as:

> ... an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

▪ The word "accident" is not further defined in the policy. We give the term its "normal meaning" in light of all of the relevant circumstances. *See State Bancorp, Inc. v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 99, 105, 483 S.E.2d 228, 234 (1997) (*per curiam*).

▪ Westfield argues that any death by suicide is by definition not an "accident," because the suicidal person deliberately intended his or her own death.

However, it is well recognized that a suicidal person's mental state and actions are often strongly affected by recognized medical conditions like clinical depression; or by other factors that are similarly extrinsic to a person's exercise of their "free will." Thus, in many cases it would be both inexact and erroneous to assume or presume that a freely formed and uncoerced "intent" was involved in suicidal or self-injurious conduct.

Nevertheless, from the perspective or standpoint of a jail inmate who commits suicide, the inmate's death can generically be reasonably seen as not being an accident— and we will proceed along that understanding.

▪ Even so, from another (and equally valid) perspective or standpoint—that of a county commission that has duties and responsibilities in connection with a jail—the death by suicide of a jail inmate can be reasonably seen as an accident, if the commission did not have a desire, plan, expectation, or intent that the death would occur.[2]

Columbia argues that the question of whether the suicidal deaths were or were not "accidents" should be answered by applying the terms of the insurance policy to and from the perspective or standpoint of the insured commission, and not the perspective or standpoint of the inmates.

Columbia argues that the clear weight of authority in other jurisdictions applying the insurance policy terms used in the instant case is that the "accident-versus-not-an-accident" determination is ordinarily if not always made after considering and giving substantial weight to the perspective or standpoint of the insured. *See King v. Dallas Fire Ins. Co.*, 45 Tex. Sup. Ct. J. 1224, 85 S.W.3d 185, 188 (2002) ("the insured's standpoint controls in determining whether there has been an 'occurrence' ...").[3] Our review indicates that this contention by Columbia is correct.

In *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503 (6th Cir.2003), the issue was wheth-

---

2. An intentional acts exclusion in a liability policy is operable when the policyholder commits an intentional act and expects or intends the specific resulting damage. Syllabus Point 7, *Farmers & Mechanics Mut. Ins. Co. v. Cook*, 210 W.Va. 394, 557 S.E.2d 801 (2001). Because of the specific language used in the Fourth Circuit's certified question, we need not discuss the relationship between the terms "occurrence" and "accident" in the insurance policy at issue in the instant case, and exclusionary language in the policy relating to intentional acts—except to say that no other language in the policy appears to be inconsistent with our holding and reasoning stated herein.

3. *See also American Family Mut. Ins. Co. v. Enright*, 334 Ill.App.3d 1026, 269 Ill.Dec. 597, 781

N.E.2d 394 (2002); *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 653–4 (Iowa 2002); *Allstate Ins. Co. v. McCarn*, 466 Mich. 277, 645 N.W.2d 20, 23 (2002); *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 595 N.W.2d 832 (1999); *American Family Ins. Co. v. Walser*, 628 N.W.2d 605 (Minn.2001); *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540, 548 (1996); *Holz–Her U.S., Inc. v. United States Fid. & Guar. Co.*, 141 N.C.App. 127, 539 S.E.2d 348 (2000); *L–J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 350 S.C. 549, 567 S.E.2d 489, 492–3 (2002); *Mutual of Enumclaw Ins. Co. v. Gutman*, 172 Or.App. 528, 21 P.3d 101, 105 (2001); *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773 (Tex.App.2002); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 189 (Tex.2002).

er alleged negligence in hiring was an accident under a liability policy with the same definition of "occurrence" language as in the instant case. Applying Kentucky law, the Sixth Circuit said in *Tech Dry*, quoting Kentucky case law:

> "according to its plain meaning, an 'accident' denotes something that does not result from a plan, design, or an intent *on the part of the insured*." [emphasis added, citations omitted].[4]

Westfield argues that language in this Court's decision in *State Bancorp, Inc. v. United States Fid. & Guar. Ins. Co.*, 199 W.Va. 99, 105, 483 S.E.2d 228, 234 (1997) (*per curiam*) means that it makes no difference, for purposes of deciding whether an occurrence involving an injury was an accident, whether or not the insured seeking coverage can be reasonably seen as having any actual or constructive plan, design, expectation, or intent to cause a specific injury. The language in *State Bancorp* upon which Westfield relies is a quote from a Washington case, and states:

> [a]n "accident" generally means an unusual, unexpected and unforeseen event .... *An accident is never present when a deliberate act is performed* unless some additional unexpected, independent and unforeseen happening occurs which produces the damage .... To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

*Id.* (emphasis added, citation omitted).

Westfield reasons (using this quoted language from *State Bancorp*) that in the instant case, "an accident is not present because a deliberate act (a suicide) has been performed." Westfield argues that under its liability policy there cannot be any "occurrence" triggering coverage and giving rise to a duty to defend and possibly indemnify the

commission—if the occurrence involved can be seen as "not-an-accident" from the perspective or viewpoint of *anyone* involved in causing the occurrence—(in the instant case, from the perspective or standpoint of the inmates).

However, the opinion in *State Bancorp* is entirely consistent with the position that the perspective or standpoint of the insured whose coverage is at issue *is* highly relevant in applying policy language regarding the accidental/non-accidental nature of an occurrence. In *State Bancorp*, this Court held that there was no covered occurrence or accident when, in an underlying lawsuit, the insured was alleged to have intended the alleged injury to the plaintiffs. In stating its reasoning and its conclusion, the *State Bancorp* opinion stated: "[T]he definition of an 'occurrence' does not include actions which are intended *by the insured*.... [;] the facts alleged in the complaint ... are intentional acts *of the insured*.... [;] the ... allegation [is of] ... intentional scheming *by the [insured]* appellees ...." 199 W.Va. at 106–107, 483 S.E.2d at 235–236 (emphasis added).

In West Virginia, consideration of the accidental/non-accidental and similar intentional-or-not nature of conduct or injuries has routinely involved consideration of and giving weight to the perspective and standpoint of the insured whose coverage is at issue. *See, e.g., State Bancorp, supra; West Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 602 S.E.2d 483 (2004) (complaint essentially alleged intentional injuries by all insureds); *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 670 n. 17, 542 S.E.2d 827, 833 n. 17 (2000) ("[T]he complaint is replete with allegations that [the insured] committed intentional acts."); *Koger v. Mutual of Omaha Ins. Co.*, 152 W.Va. 274, 163 S.E.2d 672 (1968) (suicide by insured was not an accident).[5] And in other jurisdictions, giving

---

**4.** *See also Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802 (N.H.1986) ("[T]he general rule for applying 'accident' or 'occurrence' causation coverage looks to the insured defendant to determine whether the casual event was fortuitous or not.").

**5.** In the instant case, there is no conduct alleged that would justify imputing the inmate's presumed suicidal intent to the commission. Adopting Westfield's suggested approach might pre-

clude liability insurance coverage for insureds in many cases involving allegedly intentional or non-accidental conduct by actors who had a substantial and material role in causing an injury, but where the insured seeking coverage cannot be fairly "tarred with the same brush" of that actor's coverage-defeating conduct. Premises liability, product liability, negligent hiring and supervision, and negligent entrustment cases come to mind. We see no intent in our cases interpreting and applying general liability policies to deny

primary consideration, relevance, and weight to the standpoint or perspective of the insured in the application of insurance policy language is common and is certainly not barred. "[B]oth the term accident and intentional conduct must be viewed from the point of view of insured and intent of insured." *Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773 (Tex.App.2002). *See* note 3, *supra.*

■ Based on the foregoing discussion, we hold that in determining whether under a liability insurance policy an occurrence was or was not an "accident"—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue. This principle must, of course, be applied in conjunction with Syllabus Point 5 of *Tackett v. American Motorists Ins. Co.*, 213 W.Va. 524, 584 S.E.2d 158 (2003), which calls for resolving doubts regarding insurance coverage in favor of an insured.

Applying these principles to the facts in the instant case, it is clear that from the perspective or standpoint of the insured Randolph County Commission, the inmates' deaths by suicide were not deliberate, intentional, expected, desired, or foreseen by the commission. Absent other compelling reasons to take a different approach (we see none), it must be concluded that the deaths were "accidents" and thus "occurrences" under the policy language in question.[6]

We therefore answer the Fourth Circuit's certified question:

> Q: Under West Virginia law, were the suicidal deaths of Robinson and Everson, either or both, "occurrences" within the

meaning of the Westfield Insurance Company commercial general liability policy at issue in this case?

A: Yes.

## IV.

### Conclusion

The instant case is dismissed from the docket of this Court.

Certified Questions Answered and Dismissed.

---

liability coverage to insureds in a wide range of cases where an insured was allegedly negligent but did not (actually or constructively) intend to cause a specific injury. The purpose of insurance liability policies is to provide a defense and indemnification to an insured for claims arising from the insured's own negligent acts or omissions. *Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement*, 206 W.Va. 506, 511, 526 S.E.2d 28, 33 (1999).

**6.** *See Merchants Mut. Ins. Co. v. Concord*, 117 N.H. 482, 374 A.2d 945 (1977) (suicidal death of a county jail inmate was, from the city's stand-

point, an accident and within the terms of the insurance policy). Additionally, it must be remembered that the gravamen of the complaints in the underlying cases is that *the suicidal acts were proximately caused by the negligent conduct of the sheriff and commission in breaching their duties in managing the jail.* This allegedly negligent and proximately causative conduct removes the deaths from the ambit of the quoted definition of "accident" from *State Bancorp*—because the sheriff's and commission's negligence were (allegedly) "additional unexpected, independent ... happening[s]" that "produce[d] the damage." 199 W.Va. at 105, 483 S.E.2d at 234.