IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0262

_____

**FILED**

**June 4, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JOHN D. FLOWERS, DAVE FLOWERS d/b/a VENOM, INC.,
Third-party Plaintiffs Below, Petitioner

v.

MAX SPECIALTY INSURANCE COMPANY,
A VIRGINIA CORPORATION,
Plaintiff Below, Respondent

AND

_____

No. 13-0317

_____

DARIN I. DRANE,
Defendant Below, Petitioner

v.

MAX SPECIALTY INSURANCE COMPANY,
a VIRGINIA CORPORATION,
Plaintiff Below, Respondent

_____

Appeals from the Circuit Court of Cabell County
The Honorable David M. Pancake, Judge
Civil Action No. 11-C-216

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____

Submitted: February 4, 2014
Filed: June 4, 2014

Thomas H. Peyton, Esq.
Peyton Law Firm, PLLC
Nitro, West Virginia
Counsel for John D. Flowers,
Dave Flowers, Inc. d/b/a Venom, Inc.,
Petitioner

Scott W. Andrews, Esq.
Hoover Andrews PLLC
Barboursville, West Virginia
Counsel for Darin Drane, Petitioner

Albert C. Dunn, Esq.
Allen, Kopet & Associates, PLLC
Charleston, West Virginia
Counsel for John Young and Young
Insurance Agency, Defendants Below

Duane J. Ruggier II, Esq.
Geoffrey Cullop, Esq.
Pullin, Fowler, Flanagan, Brown & Poe
PLLC
Charleston, West Virginia
Counsel for Max Specialty Insurance
Company, Respondent

The Opinion of the Court was delivered PER CURIAM.

JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination." Syllabus Point 2, *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999).

2. "In determining whether under a liability insurance policy an occurrence was or was not an "accident"—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue." Syllabus, *Columbia Cas. Co. v. Westfield Ins. Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005).

Per Curiam:

These consolidated appeals are before the Court upon the petitions of John D. Flowers, Dave Flowers, Inc. d/b/a Venom, Inc. and Darin I. Drane, who both seek to reverse the Circuit Court of Cabell County's order granting declaratory judgment to Respondent Max Specialty Insurance Company. Specifically, Venom appeals the circuit court's finding that Max Specialty's duty to defend ends once the policy limits are exhausted through the expenditure of attorney's fees and litigation costs related to the defense of the underlying tort actions. Separately, Drane appeals the circuit court's finding that available coverage is limited to $25,000 under the "Limited Assault and Battery Coverage" endorsement to the policy. Upon examination of the petitions, the responses, the submitted appendices, and the arguments of counsel, this Court concludes that the February 8, 2013, order of the Circuit Court of Cabell County granting Max Specialty's Motion for Declaratory Judgment should be affirmed, in part, and reversed, in part, and remanded for further proceedings consistent with this Opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Respondent Max Specialty's Complaint for declaratory judgment arose out of an incident that occurred at Club Venom, a bar in Huntington which was owned and

1

operated by John D. Flowers and/or Dave Flowers, Inc. d/b/a Venom, Inc. ("Venom").[1]

Max Specialty issued a commercial liability insurance policy to Flowers and/or Venom

for the policy period of August 21, 2009 through March 23, 2010.[2] On or about the night

of February 21, 2010, an altercation occurred between some Club Venom patrons. During

the altercation, an unidentified man allegedly fired a gun inside Club Venom. The

altercation and subsequent shooting resulted in three Venom patrons receiving gunshot

wounds. Petitioner Darin Drane was one of the patrons of Club Venom who was injured

during the incident.[3] Drane notified Venom that he intended to sue for negligence,

negligent security, and failure to warn. After being advised of this claim, Max Specialty

issued a reservation of rights to Venom and filed the instant declaratory judgment action

to determine coverage.

The limits of the applicable policy are a one million per occurrence limit, a

two million aggregate limit, and a $5,000.00 medical expense limit for any one person.

The policy includes an exclusion for claims arising from "Assault or Battery." However,

the policy also includes an endorsement for "Limited Assault or Battery Coverage" with

a limit of $25,000 per event and $25,000 per aggregate.

---

[1] Club Venom is located at 1123 4th Avenue in Huntington, West Virginia.

[2] The applicable renewal policy is identified as Policy Number MAX012700003560.

[3] The other victims injured in the shooting were Robert Turbeville and Kaitlin Grace Marcum. They are not involved in the instant appeal.

2

The Assault or Battery Exclusion states as follows:

**ASSAULT OR BATTERY EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT THROUGHLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**

In consideration of the premium charged, it is understood and agreed that this insurance does not apply to liability for damages because of "bodily injury", "property damage", "personal and advertising injury", "medical expense", arising out of an "assault", "battery", or "physical altercation" that occurs in, on, near, or away form an insured's premises:

1. Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons or other persons in, on, near or away from an insured's premises, or

2. Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in safe condition, or

3. Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the "assault," "battery," or physical altercation," including but not limited to, negligent hiring, training and/or supervision.

4. Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

**DEFINITIONS:**

3

For purposes of this endorsement:

**"Assault"** means any attempt or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of such injury.

**"Battery"** means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

**"Physical altercation"** means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

All other term, conditions, definitions and exclusions apply.

The Limited Assault and Battery Coverage form provides as follows:

**LIMITED ASSAULT OR BATTERY COVERAGE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT THROUGHLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM COMMERCIAL PROFESSIONAL LIABILITY COVERAGE FORM LIQUOR LIABILITY COVERAGE FORM Schedule**

| **LIMITS OF INSURANCE** | **PREMIUM** |
|---|---|
| **$ 25,000.00 Per Event** | **$ 300.00** |
| **$ 25,000.00 Aggregate** | |

4

For the above premium, the MXG108 – Assault or Battery Exclusion is inapplicable; the Limit of Insurance shown in the above schedule applies.

## 1. COVERAGE – LIMITED ASSAULT COVERAGE

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or medical expense, arising out of an "event," of "assault," "battery," or "physical altercations" that occurs in, on, near, or away from an insured's premises:

a) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of an insured, an insured's employees, patrons or other persons in, on, near or away from an insured's premises, or

b) Whether or not caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in safe condition, or

c) Whether or not caused by or arising out of any insured's act or omission in connection with the prevention, suppression, failure to warn of the "assault," "battery," or physical altercation," including but not limited to, negligent hiring, training and/or supervision.

d) Whether or not caused by or arising out of negligent, reckless, or wanton conduct by an insured, an insured's employees, patrons or other persons.

## LIMITS OF INSURANCE

The most we pay under the COMMERCIAL GENERAL LIABILITY COVERAGE PART, the COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART, and the LIQUOR LIABILITY COVERAGE PART for damages and for SUPPLEMENTARY PAYMENTS for any "assault," "battery," or "physical altercation" is the "per event" limit shown in the Schedule above.

The amount shown under the Schedule above as the aggregate is the most we will pay for damages and for SUPPLEMENTARY PAYMENTS under the COMMERCIAL GENERAL LIABILITY COVERAGE PART, the COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART, and the LIQUOR LIABILITY COVERAGE PART under paragraph 1 in any one policy period irrespective of the number of claimants or injuries.

The Limits of Insurance above shall not be in addition to any other Limits in the policy.

Any supplementary payments we make arising out of an "event" of "assault and battery" or "physical altercation" that occurs in, on, near or away from an insured's premises, will reduce the Limits of Insurance shown above.

No other obligation or liability to pay sums or perform acts or services is covered.

**DEFINITIONS:**

(For purposes of this endorsement)

**"Assault"** means any attempt or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of such injury.

**"Battery"** means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

**"Physical altercation"** means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

**"Event"** may be comprised of one or more incidents of assault and battery taking place in one twenty-four (24) hour period.

6

No other obligation or liability to pay sums or perform acts or services is covered.

All other policy terms, exclusions and conditions remain the same.

On or about May 5, 2011, Max Specialty filed its Amended Complaint for Declaratory Judgment against John D. Flowers, Dave Flowers, Inc., d/b/a Venom, Inc., Robert Daniel Turbeville, Darin Idris Drane, and Kaitlin Grace Marcum. Max Specialty asked the circuit court to enter a declaratory judgment determining the applicability of the provisions of the subject insurance policy, determining specifically Max Specialty's rights, liabilities, obligations, and duties concerning insurance coverage. In doing so, Max Specialty sought a declaration that the subject insurance policy provides only up to $25,000.00 in insurance coverage and no coverage for punitive damages pursuant to the policy's "Limited Assault or Battery" endorsement.

Max Specialty filed a Motion for Summary Judgment on July 26, 2011. Responses and replies were filed with the circuit court. On February 8, 2013, the circuit court entered its Order, holding that the applicable policy of insurance limited coverage under the given facts to $25,000.00. The circuit court also held that payments of attorney's fees and litigation costs (supplementary payments) made by Max Specialty reduce the limits of remaining coverage pursuant to the unambiguous language of the "Limited Assault or Battery Endorsement." Further, the circuit court held that Max Specialty's duty to defend Venom ended once the $25,000.00 limits of insurance

7

coverage were exhausted whether through payment of attorney's fees and litigation costs, or settlement of the claims.

Following entry of the circuit court's order, Petitioner Flowers/Venom filed its petition for appeal alleging that the circuit court erred in finding that Max Specialty's duty to defend Venom ended once the $25,000.00 limits of insurance coverage were exhausted whether through payment of attorney's fees and litigation costs, or settlement of the claims. Petitioner Drane filed his petition for appeal asserting that the circuit court erred in finding that the applicable policy of insurance limited coverage to $25,000.00 under the given facts rather than the one million commercial general liability ("CGL") limits. Petitioners' appeals have been consolidated for purposes of review.

## II.

## STANDARD OF REVIEW

The West Virginia Supreme Court "reviews a circuit court's entry of a declaratory judgment *de novo*, since the principal purpose of a declaratory judgment action is to resolve legal questions." *Farmers & Mechs. Mut. Ins. Co. v. Cook*, 210 W. Va. 394, 398, 557 S.E.2d 801, 805 (2001) (*citing* Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995)). "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Farmers & Mechs. Mut. Ins. Co. v. Cook*, 210 W. Va. at 399, 557 S.E.2d at 806 (*quoting Murray v. State Farm*

8

*Fire & Cas. Co.*, 203 W. Va. 477, 509 S.E.2d 1, 6 (1998)). Therefore, "the interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." *Id.* at 399, 557 S.E.2d at 806 (*quoting* Syl. Pt. 2, *Riffe v. Home Finders Associates. Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999)).

## III.

## ANALYSIS

### A.  *Venom's Appeal – No. 13-0262*

In Venom's appeal, the issue is whether the trial court erred in granting Max Specialty's motion for summary judgment when it found that the commercial general liability policy at issue permits it to terminate its duty to defend at such time as the liability policy limit of $25,000 is exhausted through the expenditure of attorney's fees and costs.[4]

Venom argues that even assuming arguendo that the "Assault or Battery Exclusion" and the "Limited Assault or Battery Coverage Endorsement" apply, Max

---

[4] Venom does not appeal the circuit court's holding that the $25,000 coverage is reduced by supplementary payments made by Max Specialty relative to the litigation of the subject claims, including costs and attorney's fees.  Venom's assignment of error only alleges that the circuit court erred when it found that the commercial general liability policy at issue permits Max Specialty to terminate its duty to defend at such time as the liability policy limit of $25,000 is exhausted through the expenditure of attorney's fees and litigation costs related to the defense of the underlying tort actions.

Specialty nonetheless has a duty to defend Venom beyond the $25,000 coverage limit. Venom asserts that the purported monetary limitation on Max Specialty's duty to defend is not set forth in clear and unambiguous language in the policy.

Venom asserts that the Max Specialty policy requires the reading of different sections of the policy in an attempt to determine the insurer's duty to defend. First, the "Limited Assault or Battery Coverage" endorsement states that "[a]ny supplementary payments we make arising out of an 'event' of 'assault or battery' or 'physical altercation' that occurs in, on, near or away from an insured's premises, will reduce the Limits of Insurance shown above." Venom maintains that the endorsement does not define "supplementary payments" but instead references the main CGL policy.

Venom contends that the CGL policy contains a section describing supplementary payments, but this section does not expressly include attorney's fees or litigation costs incurred as a result of the duty to defend. It states that Max Specialty will pay "All expenses we incur" but does not define expenses to include the attorney's fees paid for the defense. Moreover, it states that supplementary payments "will not reduce the limits of insurance."

Venom contends that the only policy language that references the duty to defend is set forth in Section 1 of the policy. Section 1.a states that Max Specialty has a duty to defend the insured against any suit seeking bodily injury damages. Section 1.a(2)

10

states that Max Specialty's "right and duty to defend ends when we have used up the applicable limits of insurance in the payments of judgments or settlements under Coverages A or B or medical expenses under Coverage C." Venom contends that because there have been no settlements or judgments in this case, this provision is inapplicable.

To the contrary, Max Specialty avers that coverage for the injured patrons' claims is not established by the CGL part of the policy. Max Specialty maintains that the CGL policy clearly and expressly excludes such coverage in the "Assault or Battery Exclusion." The exclusion expressly provides that it applies to the CGL coverage part. Accordingly, Max Specialty contends that it is only under the "Limited Assault or Battery Coverage" endorsement that any coverage for the underlying claim is established.

Max Specialty argues that the "Limited Assault or Battery Coverage" endorsement plainly and unambiguously states that supplementary payments made by Max Specialty reduce the $25,000 policy limit:

> The most we pay under the Commercial General Liability Coverage Part . . . and for SUPPLEMENTARY PAYMENTS for any "assault", "battery", or "physical altercation" is the "per event" limit shown in the Schedule above.

> The amount shown under the Schedule above as the aggregate is the most we will pay for damages and for SUPPLEMENTARY PAYMENTS under the COMMERCIAL GENERAL LIABILITY COVERAGE PART . . . irrespective of the number of claimants or injuries.

11

. . . . Any supplementary payments we make arising out of an "event" of "assault and battery" or "physical altercation" that occurs in, near or away from an insured's premises, will reduce the Limits of Insurance shown above. . . .

(emphasis added).

Max Specialty asserts that requiring it to expend more than $25,000, even for defense costs, would contradict the express policy language. It contends that although "supplementary payments" is not defined in the endorsement, it is plainly and unambiguously defined in the policy. The first supplementary payment which is listed in the policy is "a. All expenses we incur . . . ." Therefore, Max Specialty contends that the expenses which it incurs in providing a defense to any suit against its insured are considered "supplementary payments" pursuant to the plain and unambiguous policy language. Max Specialty maintains that the attorney's fees it pays to defend an insured from covered claims is an expense incurred by the insurer. It asserts that when the endorsement is read along with the definition of "supplementary payments" contained in the CGL coverage part there is no ambiguity.

After thorough review of the parties' arguments and the record before us, we conclude that the circuit court's order must be reversed on this issue. In the case *sub judice*, the purported monetary limitation on Max Specialty's duty to defend is not set out in clear, direct, and unambiguous language. Coverage for the event is established by the Commercial General Liability Coverage Form which provides as follows:

**SECTION I – COVERAGES**

12

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **We will have the right and duty to defend the insured against any "suit" seeking those damages.** (Emphasis added.) However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) **Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B** or medical expenses under Coverage C. (Emphasis added.)

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

\*     \*     \*     \*     \*

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of

13

the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit on insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**These payments will not reduce the limits of insurance.** (Emphasis added).

The Limited Assault and Battery Coverage

Form further provides:

**LIMITS OF INSURANCE**

The most we pay under the COMMERCIAL GENERAL LIABILITY COVERAGE PART, the COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART, and the LIQUOR LIABILITY COVERAGE PART for damages and for SUPPLEMENTARY PAYMENTS for any "assault,"

14

"battery," or "physical altercation" is the "per event" limit shown in the Schedule above.

The amount shown under the Schedule above as the aggregate is the most we will pay for damages and for SUPPLEMENTARY PAYMENTS under the COMMERCIAL GENERAL LIABILITY COVERAGE PART, the COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART, and the LIQUOR LIABILITY COVERAGE PART under paragraph 1 in any one policy period irrespective of the number of claimants or injuries.

The Limits of Insurance above shall not be in addition to any other Limits in the policy.

Any supplementary payments we make arising out of an "event" of "assault and battery" or "physical altercation" that occurs in, on, near or away from an insured's premises, will reduce the Limits of Insurance shown above.

No other obligation or liability to pay sums or perform acts or services is covered.

The Max Specialty policy requires reading of different sections of the policy in an attempt to determine the limitations on the duty to defend. First, the Limits of Insurance section of the Limited Assault and Battery Coverage endorsement does not define "Supplementary Payments", but, instead, simply refers to a separate portion of the CGL policy which addresses supplementary payments. This section does not address defense costs and attorney fees directly, but does state that supplementary payments "will not reduce the limits of insurance." The Supplementary Payments portion of the policy does not expressly reference attorney fees incurred as a result of Max Specialty's duty to defend and does not contain any language regarding the termination of its duty to defend. The Supplementary Payments language does state that Max Specialty will pay "All

15

expenses we incur", but it does not define expenses to include the attorney fees paid to an attorney pursuant to its duty to defend a suit as established in SECTION I - COVERAGES.

The only policy language which references the duty to defend is set forth in Section I, Coverage A. The policy clearly states that Max Specialty has a duty to defend Flowers against any suit seeking bodily injury damages. In regard to the termination of the duty to defend, the only policy language specifically addressing this issue states, "[o]ur right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements[.]" It is uncontested that Max Specialty has not paid the policy limits toward settlements or judgments. There has not been a trial by jury, nor have the alleged tort victims accepted a settlement in exchange for a release of Flowers from further liability.

The language of the Limited Assault or Battery Coverage is also instructive to the extent it provides that the policy language of the General Liability Coverage Form remains applicable and is simply modified by the endorsement. The endorsement plainly states that coverage is provided under the COMMERCIAL GENERAL LIABILITY COVERAGE PART. (Emphasis in original.) The Limited Assault or Battery Coverage endorsement is not a policy standing alone. Rather, this endorsement nullifies the alleged Assault or Battery Exclusion and provides a lower policy limit for damages resulting from an "assault" or "battery."

16

The CGL coverage part does not contain any provision that reduces policy limits by attorney fees and costs incurred for the defense of the subject tort actions. Further, the endorsement, even when read in *pari materia* with the Supplementary Payments provision, does not clearly, directly or unambiguously state that the policy limits are reduced by attorney fees and costs incurred for the defense of the subject tort actions. There is only one clause in the entire policy, including endorsements, which has any bearing on Max Specialty's right to terminate its duty to defend Flowers. The two alternate conditions by which it may terminate its duty to defend, payment of a judgment or settlement, have not occurred.

Venom cites to an unpublished opinion from the United States District Court, Southern District of West Virginia, *Liberty Insurance Underwriters, Inc. v. Camden Clark Memorial Hosp. Corp*., (S.D.W.Va. 12-8-2009), which analyzed an insurer's duty defend in a case where the insurer argued that the policy limits were diminished by attorney fees and that the duty to defend ended when the limits of the policy were reached. In that opinion, the District Court cited to prior holdings of this Court, stating,

> [t]he language of the insurance policy delineates an insurer's duty to defend. *See, e.g., Tackett v. Am. Motorists Ins. Co*., 584 S.E.2d 158, 162 (W. Va. 2003); *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988). Crucially, "any ambiguity in the language of an insurance policy is to be construed liberally in favor of the insured, as the policy was prepared exclusively by the insurer." *Horace Mann*, 376

17

S.E.2d at 584; *see also Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986) ("[A]ny question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations.").

The District Court held that the purported monetary limitation on Liberty's duty to defend was not set out in clear, direct, unambiguous language. Limitations on an insurer's duty to defend must be so expressed. *See Liberty Ins. Underwriters, Inc. v. Camden Clark Mem. Hosp. Corp.*, (S.D.W. Va. 12-8-2009) (citing *Chicago Title Ins. Co. v. Kent School Corp.*, 361 F. Supp. 2d 4, 10 (D. Conn. 2005)).

"The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination." Syl. Pt. 2, *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). *See also Payne v. Weston*, 195 W.Va 502, 506-507, 466 S.E.2d 161, 165-166 (1995). Similarly, a "determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 482, 509 S.E.2d 1, 6 (1998). With regard to a court's interpretation of an insurance contract's policy language, we held that,

> [i]n West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and in doing so we construe all parts of the document together; We will not

18

rewrite the terms of a policy; instead, we will enforce it as written.

*Pavne v. Weston*, 195 W.Va. 502, 507, 466 S.E.2d 161, 166 (1995).

It is well-settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured. *See Mylan Laboratories, Inc. v. Am. Motorists Ins. Co.*, 226 W.Va. 307, 309, 700 S.E.2d 518, 520 (2010). Insurance policy language is ambiguous when it is reasonably susceptible of different meanings.

In the case at hand, the Max Specialty policy does not state that the endorsement overrides the supplementary payments provision of the policy. Further, the Max Specialty endorsement does not address the termination of its duty to defend. The Limited Assault and Battery endorsement specifically states that the payments covered by the endorsement are "under the COMMERCIAL GENERAL LIABILITY COVERAGE PART[.]" Therefore, the insured is required to refer back to both the CGL coverage and the supplementary payments parts of the policy. The provisions in these parts regarding the duty to defend are contradictory to the endorsement. These contradictory and confusing provisions create significant ambiguity within the entire policy. This ambiguity must be liberally construed in favor of Venom. If Max Specialty wished to restrict its duty to defend, the endorsement should have expressly said so. *See, e.g., Nat'l Union v. Lake Acad.*, 548 F.3d 8 (1st Cir. 2008).

19

Accordingly, we conclude that the circuit court erred in finding that the CGL policy at issue permits Max Specialty to terminate its duty to defend at such time as the liability policy limit of $25,000 is exhausted through the expenditure of attorney's fees and costs related to the defense of the underlying tort actions.

### B. Drane's Appeal – No. 13-0317

In this appeal, Mr. Drane, a third-party claimant, appeals the circuit court's finding that available coverage is limited to $25,000 under the "Limited Assault and Battery Coverage" endorsement to the CGL policy, rather than the $1 million limit that is otherwise available under the CGL coverage part.

Drane alleges that the shooting victims sued Venom for negligence—not for an intentional act. The unknown shooter is not a party to this suit and there is no evidence suggesting that the shooter was an employee of Venom. There are no allegations that Venom intended for the shooter to fire his gun, or that it intended for any of its customers to be shot. Drane asserts that analyzing the incident and coverage from Venom's perspective, this qualifies as a covered "bodily injury" and "occurrence" under the bodily injury coverage in the CGL coverage part. Drane contends that this is a bodily injury caused by an occurrence in the covered territory and during the policy period.

20

Coverage is conferred by the Policy's Commercial General Liability Coverage Form, SECTION 1 - COVERAGES, COVERAGE A, BODILY INJURY AND PROPERTY DAMAGE LIABILITY, which provides in pertinent part:

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1 of Section II - Who is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part....

The Commercial General Liability Coverage Form provides the following pertinent definitions in SECTION V - DEFINITIONS:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

21

In its Complaint, Max Specialty discussed the Policy's ASSAULT AND BATTERY EXCLUSION, and the LIMITED ASSAULT OR BATTERY COVERAGE available under the Policy. The Exclusion contains the following definitions:

> "Assault" means any attempt of threat to inflict injury to another including any conduct that would reasonably place another apprehension of such injury.
>
> "Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.
>
> "Physical altercation" means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.
>
> All other terms, conditions, definitions and exclusions apply.

The Limited Assault or Battery Coverage Endorsement contains the following definitions, which vary slightly from the Exclusion:

> "Assault" means any attempt of threat to inflict injury to another including any conduct that would reasonably place another apprehension of such injury.
>
> "Battery" means the intentional or reckless physical contact with or any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected. The use of force includes but is not limited to the use of a weapon.

22

"Physical altercation" means a dispute between individuals in which one or more persons sustain bodily injury arising out of the dispute.

"Event" may be comprised of one or more incidents of assault and battery taking place in one twenty-four (24) hour period.

All other policy terms, exclusions and conditions remain the same.

Finally, the Policy's Declarations Page provides a limit for each occurrence of Commercial General Liability of $1,000,000.00. The Endorsement for the Limited Assault or Battery Coverage is limited to $25,000.00.

Drane argues that the circuit court's major error was failing to analyze coverage from the standpoint of Venom, the insured policyholder. With regard to intentional acts exclusions, this Court has held that "a policyholder may be denied coverage only if the policyholder (1) committed an intentional act, and (2) expected or intended the specific resulting damage." *Farmers and Mechanics Mut. Ins. Co. v. Cook*, 210 W.Va. 394, 400, 557 S.E.2d 801, 807 (*quoting SER Davidson v. Hoke*, 207 W.Va. 332, 339, 532 S.E.2d 50, 57 (2000)). Drane maintains that the same rationale should apply to an endorsement which purports to provide limited coverage for an intentional tort such as assault and/or battery. This Court held in *Columbia Cas. Co. v. Westfield Ins. Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005), that a county jail inmate's suicide constituted an accident and a covered "occurrence" under a general liability policy from the standpoint of the insured county commission. Although the inmate intended suicide,

23

the county commission had no desire, plan, expectation, or intent for the death to occur. This Court said,

> In determining whether under a liability insurance policy an occurrence was or was not an "accident"—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue.

*Syl., Columbia Cas. Co.*

Drane contends that to the extent the "Assault or Battery Exclusion" or the "Limited Assault or Battery Coverage" endorsement say otherwise, they are ambiguous. He asserts that the term "occurrence" is not found anywhere in the exclusion or endorsement, and thus, these documents do not exclude or limit coverage for an "occurrence." Drane argues that under the policy definitions, an "occurrence" is essentially an accident. However, assault and battery are intentional torts. Drane maintains that where a specific, defined term such as "occurrence" is not used in an exclusion or purported limitation of coverage, one can only conclude that the exclusion or limitation does not defeat an "occurrence."

Instead of using the term "occurrence," the "Limited Assault or Battery Coverage" endorsement uses the term "event." "Event" has a different definition than "occurrence" and refers only to assault and battery. Moreover, the endorsement also clearly states that "[a]ll other policy terms, exclusions and conditions remain the same." The "Assault or Battery Exclusion" mentions neither "occurrence" or "event." Drane

24

contends that the drafter's failure to be more specific about the terms and conditions of its policy renders the policy ambiguous and subject to multiple interpretations; ambiguous terms are construed in favor of the insured. Drane maintains that the incident constitutes an "occurrence" under the policy, and therefore the $1 million limit of the CGL policy applies.

Respondent Young & Young Insurance Company ("Young") joins Drane's argument and asserts that the circuit court made two errors: (1) it made an improper finding of fact that the incident at issue was an intentional act of battery; and (2) it erroneously determined that the CGL policy and the "Limited Assault and Battery Coverage" endorsement are clear and unambiguous as to coverage for actions that are not intentional by the insured.

Young first asserts that the circuit court erred in concluding as a matter of law in summary judgment that an intentional battery had occurred. Young contends that this finding was based solely on the fact that three people in a bar suffered gunshot wounds, but there is nothing in the record as to who committed the shootings, why the shots were fired, how the shots were fired, or who the targets were. The three victims were not together in the bar, and the bar was crowded. Young maintains that the gun's discharge could have been accidental. Young argues that there is no factual basis in the record for a court to conclude whether it was intentional or accidental. Young avers that whether Venom failed to keep the premises safe is a matter of negligence, not intentional

25

conduct, and the exclusion and endorsement pertain to intentional conduct. Young asserts that the circuit court did not consider the negligence claims and what provisions of the policy those claims would trigger.

Conversely, Max Specialty argues that Drane attempts to muddy the waters by presenting arguments based upon the policy's "intentional acts exclusion" but that exclusion is not at issue in this matter. It asserts that the circuit court was asked to interpret the policy's "Limited Assault or Battery Coverage" endorsement, which is different from the "intentional acts exclusion." By its own terms, the endorsement contemplates limited coverage. As such, Max Specialty contends that Drane's arguments are completely misplaced and irrelevant.

Max Specialty asserts that the plain and unambiguous language in the "Assault or Battery Exclusion" defeats Drane's argument that this was a covered occurrence because any liability for assault, battery, or physical altercation is expressly excluded. It provides,

> In consideration of the premium charged, it is understood and agreed that this insurance does not apply to liability for damages because of "bodily injury" . . . [or] "medical expense", arising out of an "assault", "battery", or "physical altercation" that occurs in, or, near, or away from an insured's premises.

The exclusion goes on to explain that it applies whether the damages sound in negligence, intentional tort, or some combination thereof.

Max Specialty contends that Venom paid an extra three hundred dollar premium for the limited assault or battery coverage. In the endorsement, "battery" is defined as "the intentional or reckless physical contact with or any use or force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflected is intended or expected. The use of force includes [but] is not limited to the use of a weapon." Max Specialty argues that Drane's gunshot wound clearly falls under this definition. The endorsement states that the insurer will only pay $25,000 in insurance coverage for damages "**that the insured becomes legally obligated to pay as damages because of bodily injury; or medical expense, arising out of an event of . . . battery[.]**" (emphasis added). The limited $25,000 coverage applies whether or not "**caused by or arising out of an insured's failure to properly supervise or keep an insured's premises in a safe condition**[.]" (emphasis added). Thus, Max Specialty asserts that the only coverage available for Drane's (and the other customers') claims is $25,000 from the "Limited Assault or Battery Coverage" endorsement.

Max Specialty further contends that *Columbia Casualty* and the other cases cited by *Drane* are inapplicable. In this case, an analysis of the policy is being performed from the perspective of Venom, Inc. No analysis is being performed from the standpoint of the shooter.

27

In response to Young's arguments, Max Specialty argues that Young misstates the circuit court's findings. It maintains that the court did not hold that the shootings were the result of an intentional act of battery upon the three patrons. Rather, the court found that the patrons "who are now involved in this case suffered bodily injuries and/or medical expenses arising out of an event of battery or physical altercation that occurred in the insured's premises. Therefore, the Limited Assault or Battery Coverage applies to the undisputed facts of the case." Max Specialty argues that this holding mirrors the plain policy language, and whether the shooting was intentional has never been a determinative issue in this declaratory judgment action. We agree with Max Specialty's argument.

The definition of "battery" in the "Limited Assault or Battery Coverage" endorsement does not include the word "intentional." However, the endorsement does pertain to "reckless" conduct. It also states that, in the alternative, a "battery" could be "any use of force against a person without his or her consent that entails some injury or offensive touching whether or not the actual injury inflicted is intended or expected." The definition states that the aforementioned "use of force includes, but is not limited to the use of a weapon." Moreover, whether or not the shooting was intentional, the injuries alleged by the patrons arise from a battery and/or physical altercation pursuant to the definitions of those words in the "Limited Assault or Battery Coverage" endorsement.

Similarly, the question of whether or not negligence is alleged by the patrons is of no consequence to the final analysis of this insurance coverage. The damages that the patrons allege fall within the definitions of battery or physical altercation in the endorsement. Accordingly, Max Specialty was not required to prove that the shooting was intentional or not, and the circuit court correctly applied the contractual policy language. The circuit court's ruling that the Limited Assault or Battery Endorsement applies to the facts of this case and that coverage for the alleged injuries and damages is limited to $25,000 is affirmed.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm, in part, and reverse, in part, the Circuit Court of Cabell County's February 8, 2013, order granting Max Specialty's Motion for Declaratory Judgment, and remand this matter for further proceedings consistent with this Opinion.

**Affirmed, in part, Reversed, in part, and Remanded.**